**Raymond PEDRINA, et al., Plaintiffs,**

v.

**Han Kuk CHUN, et al., Defendants.**

No. 89–00439 ACK.

United States District Court,
D. Hawai'i.

June 27, 1995.

1383.

Anthony P. Locricchio, Kailua, HI, for plaintiffs.

James Bickerton, William Ramos–Saunders, Honolulu, Hawaii, for William McCorriston.

Chang Mui Chang & Chock, T. Irving Chang, Allan S. Chock, Honolulu, Hawaii, for Robert Carter.

Richard D. Wurdeman, Rodney Veary, Alice M. Fent, Deputies Corporation Counsel, Honolulu, Hawaii, for defendants.

Alston, Hunt, Floyd & Ing, Honolulu, Hawaii, for Tetsuo Yasuda, Yasuo Yasuda, Eiman Yamamoto.

Davis & Levin, Stanley E. Levin, Honolulu, Hawaii, for Masanori Kobayashi and Yoshinori Hayashida.

Matsubara Lee & Kotake, Mervyn M. Kotake, Honolulu, Hawaii, for Hiroshi Kobayashi.

Fujiyama Duffy & Fujiyama, James Duffy, Jr., Nancy Ryan, Honolulu, Hawaii, for George Hong.

Gene Lum, Honolulu, Hawaii, pro se.

Fujiyama, Duffy & Fujiyama, Wallace S. Fujiyama, James E. Duffy, Jr., Ralph R. LaFountaine, Honolulu, Hawaii, co-counsel, for Frank F. Fasi.

Warren Price, Steven Michaels, Honolulu, Hawaii, for Paty, Aki, Waihee, State Defendants.

Eric Kim, Arnold Hobson, Jr., Honolulu, Hawaii, for Community Planning.

Thomas Lavigne, Kaneohe, HI, for Plaintiff.

Steven Nakashima, Robert Hackman, Goodsill Anderson Quinn & Stifel, Honolulu, Hawaii, for Ernest Souza.

Gilbert & Jeynes, Robert Carson Godbey, Honolulu, Hawaii.

Robert Carter, Kailua, HI.

Gene Kung Ho Lum, Tulsa, OK.

Jupiter Rex Uraniumumrhi, Kailua, HI.

*ORDER GRANTING IN PART AND DE-NYING IN PART DEFENDANTS' MOTIONS FOR SUMMARY JUDG-MENT AND GRANTING SUMMARY JUDGMENT FOR ALL DEFEN-DANTS*

KAY, Chief Judge.

## BACKGROUND

This action arises out of Defendant Y.Y. Valley Corporation's ("YYVC") attempt to relocate and evict Plaintiffs,[1] who were tenants at will on land purchased by YYVC. In 1986, Royal Hawaiian Country Club, Inc. ("RHCC"), a subsidiary of YYVC, applied for and was granted a Conditional Use Permit ("CUP") from the Director of the Department of Land Utilization ("DLU") of the City and County of Honolulu, allowing the corporation to develop a golf course and country club on the property. Approval of the CUP was granted on the condition that the agricultural tenants presently located within the project site be offered an opportunity to relocate to an adjacent area. In 1986, YYVC sought city approval of a relocation plan which provided tenants living on the proposed project site an opportunity to relocate to an adjacent area under 10 year leases. Tenants living on adjacent areas were likewise included in the plan, although they were not generally required to vacate their current premises. After the city granted its approval on or about June 13, 1986, the corporation presented the plan to the tenants. Some tenants accepted the offer; others did not, including all those who lived in the area which was to be developed. Tenants who did not accept the relocation offer were served notices to vacate the property and summary possession actions were brought against them.

Plaintiffs brought the current action against Defendants Han Kuk Chun, Tetsuo Yasuda, Masanori Kobayashi, Yoshinori Hayashida, Y.Y. Valley Corporation, Hiroshi Kobayashi, Eugene Lum, Norma Lum and former mayor Frank F. Fasi ("Defendants") under the Racketeering Influenced and Corrupt Organizations Act (RICO). 18 U.S.C. §§ 1961–68. In particular, Plaintiffs allege that Defendants violated § 1962(c), prohibiting any person from conducting an enterprise through a pattern of racketeering activity and § 1962(d), prohibiting any person from conspiring to violate any of the provisions of subsections (a), (b) and (c). To support their RICO claims, Plaintiffs alleged the following injuries:

a. loss of 10–year home/farm leases in Maunawili Valley which they are entitled to as third party beneficiaries of the Conditional Use Permit;

b. loss of 10–year home/farm leases in Maunawili Valley which they are entitled to as third party beneficiaries under an oral option contract;

c. injury to rights under the implied covenant of quiet enjoyment in that their intended use of the property was substantially interfered with in many ways, including not being able to make needed repairs;[2]

d. loss of crops and improvements which they are entitled to under a negative covenant in the deed through which YYVC obtained the property;[3]

1. Plaintiffs Raymond Pedrina, Luz Pedrina, Jupiterrex Uraniumrhi and Rosita Uraniumrhi are not included in this order.

2. In particular, Plaintiffs allege that:

a) All Plaintiffs lost farming income from sales and subsistence and rental income from family members;

b) Wong, Pedrina, Kamai, Augustus, Jones, Amit, Manuel, Uraniumrhi, Duque and Aurio lost income from sale of livestock;

c) Dumadag, Bolo, Duque and Amit lost fishery income from sales and subsistence. Some of the

fish ponds were filled in by bulldozers in 1988 and 1989.

3. In particular Plaintiffs allege that

a) Manuel, Miguel, Batalona and Duque's homes were destroyed by bulldozers in 1988–89. Plaintiff James Jones' cabin was destroyed;

b) Igartas and Sullivans voluntarily gave up their homes, crops and improvements, because they were not informed of their rights under the CUP or the Deed;

c) Bolos, Dilays, Dumadag, Coloyans, Uraniumrhis, Batalona, Manuel, Miguel and Amit crops

e. the Wongs were robbed and their bull was shot;

f. certain Plaintiffs'[4] interest in the property as adverse possessors was injured when they were evicted from the property.

As predicate acts establishing "racketeering activity," Plaintiffs allege that various Defendants committed bribery, robbery, state and federal extortion and mail fraud, and/or aided and abetted or conspired in those activities.[5] With regard to their bribery claims, Plaintiffs' allege that Defendant/Developers (i.e., Y.Y. Valley Corporation, Han Kuk Chun, Tetsuo Yasuda, Masanori Kobayashi and Yoshinori "Ken" Hayashida) and Defendant Hiroshi Kobayashi made and conspired to make bribes to Defendant Fasi and other politicians in the form of illegal campaign contributions. Most of these contributions were made in August and September of 1987 with one being made in June of 1988. Although these contributions were returned by Fasi's campaign organization in October of 1988, Plaintiffs contend that the contributions were given back to Fasi in the form of cash payments. In addition, Plaintiffs allege that on or about June 1, 1988, Defendant Han Kuk Chun made an offer of $5 million as a "gift" to the City and County of Honolulu through Defendant Fasi. According to Plaintiffs, these alleged bribes were intended to influence the actions of Defendant Fasi and other public officials concerning the issuance and enforcement of the CUP.

With regard to their mail fraud claims, Plaintiffs allege that Defendant/Developers (i.e., Y.Y. Valley Corporation, Han Kuk Chun, Tetsuo Yasuda, Masanori Kobayashi and Yoshinori "Ken" Hayashida) conspired to commit mail fraud in connection with a "bribery scheme," an "eviction scheme" and a "confiscatory relocation plan scheme." In particular, Plaintiffs assert that the campaign contributions discussed above constituted mail fraud because Defendants misrepresented that they were benign contributions when, according to Plaintiffs, Defendants knew the contributions were in fact illegal bribes. Plaintiffs also contend that a series of eviction notices, and letters in furtherance of the attempted evictions, constituted mail fraud because the mailings did not inform the Plaintiffs of their right to relocate and to remove improvements from the property. These evictions letters were sent in 1988 and 1987, after the CUP was granted but before Defendants offered Plaintiffs an opportunity to relocate. As to the "confiscatory relocation scheme," Plaintiffs claim that a series of letters between Defendants' and Plaintiffs' attorneys regarding the relocation plan constituted mail fraud because the mailings purported that the plan satisfied the CUP and that Plaintiffs had to surrender various rights in order to receive benefits under the CUP. These letters were sent in 1989, around the time the relocation plan was offered to Plaintiffs. Plaintiffs further allege that Defendant Fasi aided and abetted, and conspired to aid and abet, in the commission of mail fraud by accepting the campaign contributions and allowing the alleged eviction and confiscatory relocation schemes to happen.

Plaintiffs contend that the alleged mail fraud and certain other acts of Defendants constituted extortion under state and federal laws. In particular, Plaintiffs argue that the eviction notices and letters, combined with Defendants' prior violent eviction methods, served to extort Plaintiffs of their various property interests discussed above. On May 16, 1987, some of the Defendants allegedly shot the Wong's bull and forcibly removed their other livestock and equipment from the

---

were destroyed by bulldozers in 1988 or '89 and they were prevented from attending to their crops;

d) Dumadag, Bolos, Duque and Amit's fish ponds were filled in by bulldozers.

4. Nicanor Amit, Alfredo Aurio, Sr., Benita Aurio, Frances Manuel, Cristita Bolo, Wilfredo Bolo, Josefina Bolo, Alejandro Coloyan, Ofelia Coloyan, Isidro Dilay, Margaret Dilay, Lorraine Dilay, Violeta Dumadag, Estrella Igarta, Sebastian

Igarta, Raphael Kamai, Lynda Augustus, Milnor Lum, Jennie Olinger, Francisco Pedrina, Adoracion Pedrina, William Sullivan, Jocelyn Sullivan.

5. Plaintiffs' allegations that Defendant Fasi aided and abetted in robbery and extortion were dismissed by this Court in an order filed December 18, 1990. In an order filed April 19, 1990, the Court dismissed the claims of all Plaintiffs except the Wongs as to the robbery count.

property on which the Wongs were operating a ranch. Defendants also allegedly destroyed the Wong's fences. Other Plaintiffs contend that YYVC's representative Robert Carter and some men "who looked like body guards" came to their homes and told them, in a threatening manner, that they would have to leave the property. These men also allegedly took Jupiterrex Uraniumrhi, a Plaintiff who is not a party to these current motions, to a secluded warehouse and attempted to force him to accept the relocation plan. The robbery allegations pertain to the 1987 shooting of the Wong's bull and theft of the Wong's other livestock and equipment.

On November 7, 1988, prior to filing the current action in federal court, most of the Plaintiffs [6] ("State Court Plaintiffs") filed an action against Defendants Han Kuk Chun and YYVC in the Circuit Court of the First Circuit for the State of Hawaii. Like the current action, Plaintiffs' state court action arose out of Defendant YYVC's attempt to evict the tenants from the property. The allegations and resolution of this action will be discussed below in the section on former adjudication.

In June 1990, while the current action was pending in federal court, YYVC commenced 23 summary possession actions in the District Court for the First Circuit Court of the State of Hawaii against all of the Plaintiffs in this action except Huberto Dumadag and the Estate of Laurencia Canencia. On October 12, 1990, these actions were consolidated. The tenants named in the summary possession actions each filed an answer and six counterclaims. These counterclaims and their dispositions are discussed below in the section on former adjudication.

On September 30, 1994, Defendants filed the following eighteen motions for summary judgment and partial summary judgment:

(1) DEFENDANT MAYOR FRANK F. FASI'S MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFFS RAYMOND PEDRINA, LUZ PEDRINA, ALFREDO AURIO, SR., BENITA AURIO, RAPHAEL KAMAI, LYNDA AUGUSTUS, MINOR LUM, JUPITERREX URANIUMRHI AND ROSITA URANIUMRHI (res judicata/collateral estoppel);

(2) DEFENDANT MAYOR FRANK F. FASI'S MOTION FOR SUMMARY JUDGMENT AGAINST CERTAIN PLAINTIFFS (res judicata/collateral estoppel);

(3) DEFENDANTS HAN KUK CHUN, TETSUO YASUDA, MASANORI KOBAYASHI, YOSHINORI "KEN" HAYASHIDA, AND Y.Y. VALLEY CORPORATION'S MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFFS RAYMOND PEDRINA, LUZ PEDRINA, LEONARD WONG, CHERYL WONG, ISIDRO DILAY, et. al. (res judicata/collateral estoppel);

(4) DEFENDANTS Y.Y. VALLEY CORPORATION, HAN KUK CHUN (AKA YASUO YASUDA), AND TETSUO YASUDA'S MOTION FOR SUMMARY JUDGMENT AGAINST ALL PLAINTIFFS (res judicata/collateral estoppel);

(5) DEFENDANT MAYOR FRANK F. FASI'S MOTION FOR SUMMARY JUDGMENT REGARDING IMMUNITY;

(6) DEFENDANT MAYOR FRANK F. FASI'S MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING "FEDERAL CAMPAIGN SPENDING ACT";

(7) DEFENDANTS MASANORI KOBAYASHI AND YOSHINORI "KEN" HAYASHIDA'S MOTION FOR SUMMARY JUDGMENT FOR (A) RELOCATION UNDER CONDITIONAL USE PERMIT & (B) ESTOPPEL AND BREACH OF NEGATIVE COVENANT IN DEED (injury to property rights);

**6.** Raymond Pedrina, Leonard Wong, Cheryl Wong, Isidro Dilay, Margaret S. Dilay, Lorraine Dilay, Nicanor Amit, Alejandro Coloyan, Raphael Kamai, Lynda Augustus, Alfredo Aurio, Sr., Jennie Olinger, James Jones, Sebastian Igarta, Estrella Igarta, Wilfredo Bolo, Josefina Bolo, Cristita Bolo, Francisco Pedrina, Adoracion Pedrina, William Sullivan, Jocelyn Sullivan, Violeta Dumadag, Estate of Laurencia Canencia, John Batalona.

(8) DEFENDANTS MASANORI KOBA-YASHI AND YOSHINORI "KEN" HAYASHIDA'S MOTION FOR SUMMARY JUDGMENT RE STATUTE OF FRAUDS (injury to property rights);

(9) DEFENDANT MAYOR FRANK F. FASI'S MOTION FOR SUMMARY JUDGMENT REGARDING BRIBERY;

(10) DEFENDANTS MASANORI KOBAYASHI AND YOSHINORI "KEN" HAYASHIDA'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO PLAINTIFFS' BRIBERY CLAIMS;

(11) DEFENDANTS MASANORI KOBAYASHI AND YOSHINORI "KEN" HAYASHIDA'S MOTION FOR PARTIAL SUMMARY JUDGMENT WITH RESPECT TO COUNTS 4, 5 AND 6 OF THE VERIFIED FOURTH AMENDED COMPLAINT (mail fraud and extortion);

(12) DEFENDANTS MASANORI KOBAYASHI AND YOSHINORI "KEN" HAYASHIDA'S MOTION FOR PARTIAL SUMMARY JUDGMENT WITH RESPECT TO ALL CLAIMS OF INTERFERENCE WITH OR VIOLATION OF PLAINTIFFS' PROPERTY RIGHTS;

(13) DEFENDANT MAYOR FRANK F. FASI'S MOTION FOR SUMMARY JUDGMENT REGARDING AIDING AND ABETTING IN THE COMMISSION OF MAIL FRAUD;

(14) DEFENDANT MAYOR FRANK F. FASI'S MOTION FOR SUMMARY JUDGMENT REGARDING CONSPIRACY TO AID AND ABET THE COMMISSION OF MAIL FRAUD;

(15) DEFENDANT MAYOR FRANK F. FASI'S MOTION FOR SUMMARY JUDGMENT ON ALL CLAIMS BASED UPON 18 U.S.C. § 1962(c);

(16) DEFENDANT MAYOR FRANK F. FASI'S MOTION FOR SUMMARY JUDGMENT ON ALL CLAIMS BASED UPON 18 U.S.C. § 1962(d);

(17) DEFENDANT MAYOR FRANK F. FASI'S MOTION FOR SUMMARY JUDGMENT REGARDING "PATTERN" OF RACKETEERING ACTIVITY;

(18) DEFENDANT MAYOR FRANK F. FASI'S MOTION FOR SUMMARY JUDGMENT REGARDING LACK OF STANDING AND/OR CAUSATION (injury to property rights);

Defendant Fasi joined in motions 3 and 7. Defendants YYVC, Han Kuk Chun and Tetsuo Yasuda joined in motions 1, 2, 7, 8, 10, 11, 12, 16, 17 and 18. Masanori Kobayashi and Yoshinori Hayashida joined in motions 1, 4, 6, 9, 13, 15, 16, 17 and 18. Hiroshi Kobayashi joined in motions 1, 2, 3, 4, 7, 8, 10, 11, 12, and 18. Eugene and Norma Lum joined in motions 1, 3, 4, 7, 8, 11, and 18.

Consideration of these motions was initially delayed pending settlement negotiations. After negotiations broke down, the motions were heard before this Court on May 15 and 22, 1995. For the reasons stated below, the Court GRANTS summary judgment in favor of Defendants. The Court finds that Plaintiffs' claims against all Defendants except Fasi are barred by the doctrine of claim preclusion. The Court also finds that Plaintiffs' claims against Defendant Fasi cannot survive summary judgment because Plaintiffs have failed to establish a genuine issue of fact whether Defendant Fasi participated, or agreed to participate, in the operation or control of RHCC. Accordingly, Defendant Fasi cannot be found liable under 18 U.S.C. 1962(c) or (d).

Although the above rulings are wholly dispositive of this action, the following order disposes of the remaining motions as well. Both the parties and this Court have expended considerable time and effort briefing, arguing and reviewing these issues. The Court notes that although this action is being disposed of at summary judgment, Plaintiffs have had ample opportunity to present their side. Plaintiffs were given the opportunity to amend their complaint four times and survived innumerable motions previously brought before the Court.

## STANDARD OF REVIEW

Summary judgment shall be granted where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). One of the principal purposes of the summary judgment procedure is to identify and dispose of factually unsupported claims and defenses. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The United States Supreme Court has declared that summary judgment must be granted against a party who fails to demonstrate facts to establish an element essential to its case where that party will bear the burden of proof of that essential element at trial. *Id.* at 322, 106 S.Ct. at 2552. "If the party moving for summary judgment meets its initial burden of identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact [citations omitted], the nonmoving party may not rely on the mere allegations in the pleadings in order to preclude summary judgment." *T.W. Electrical Serv. v. Pacific Elec. Contractors Assoc.,* 809 F.2d 626, 630 (9th Cir.1987). Instead, Rule 56(e) requires that the nonmoving party set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial. *Id.* At least some "significant probative evidence tending to support the complaint" must be produced. *Id.* Legal memoranda and oral argument are not evidence and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment. *British Airways Bd. v. Boeing Co.,* 585 F.2d 946, 952 (9th Cir.1978).

The standard for a grant of summary judgment reflects the standard governing the grant of a directed verdict. *See Eisenberg v. Ins. Co. of North America,* 815 F.2d 1285, 1289 (9th Cir.1987), *citing, Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Thus, the question is whether "reasonable minds could differ as to the import of the evidence." *Id.*

The Ninth Circuit has established that "[n]o longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment." *California Architectural Bldg. Products, Inc. v. Franciscan Ceramics, Inc.,* 818 F.2d 1466, 1468 (9th Cir.1987). Moreover, the United States Supreme Court has stated that "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). Indeed, "if the factual context makes the nonmoving party's claim *implausible,* that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." *Franciscan Ceramics,* 818 F.2d at 1468 (emphasis original), *citing, Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356. Of course, all evidence and inferences to be drawn therefrom must be construed in the light most favorable to the nonmoving party. *T.W. Elec. Services,* 809 F.2d at 630–31.

## DISCUSSION

### I. PRELIMINARY MATTERS

#### A. DISMISSAL OF IMPROPERLY ADDED PARTIES

In their Fourth Amended Complaint, Plaintiffs joined Huberto Dumadag and Rosita Uraniumrhi as Plaintiffs. In motion 1 and 2, Defendant Fasi requests that the Court dismiss these Plaintiffs because they were not properly added to the complaint. Plaintiffs did not seek leave of the Court to add these parties as required by Rule 15 of the Federal Rules of Civil Procedure. Nor did they bring a motion to amend their complaint before the Magistrate Judge as required by this Court's order of April 19, 1990. Therefore, the Court DISMISSES all claims of Huberto Dumadag and Rosita Uraniumrhi.

Additionally, although the Court dismissed the estate of Laurencia Canencia in a prior order, Plaintiffs continued to name the estate in their Fourth Amended Complaint. The Court hereby strikes the estate from the complaint.

## B. *FIFTH AMENDMENT PRIVILEGE*

Throughout their opposition to Defendants' motions for summary judgments, Plaintiffs argue that summary judgment should not be granted because various Defendants asserted their Fifth Amendment right against self-incrimination during their depositions. Although the Court does not agree that summary judgment is inappropriate where a defendant has asserted the Fifth Amendment, the Court recognizes that this is a factor which requires consideration in certain instances. For example, Defendants may not rely on their own testimony or affidavits to support their version of a disputed issue where they have asserted their Fifth Amendment right not to answer questions concerning that very same issue. *See United States v. Parcels of Land,* 903 F.2d 36, 43 (1st Cir.1990). Likewise, the Court may draw an adverse inference from the refusal of any of the Defendants to answer questions in response to probative evidence offered against them. *Baxter v. Palmigiano,* 425 U.S. 308, 318–19, 96 S.Ct. 1551, 1558, 47 L.Ed.2d 810 (1976); *United States v. Ianniello,* 824 F.2d 203, 208 (2nd Cir.1987); *Ramil v. Keller,* 68 Haw. 608, 620, 726 P.2d 254 (1986).

## II. *FORMER ADJUDICATION (Res Judicata)*

Defendants have filed four motions for summary judgment based on the preclusive effect of prior state court actions.[7]

In motions 1 and 2, Defendant Fasi contends that the claims and issues in the instant case are precluded by the doctrines of res judicata and/or collateral estoppel based on the summary possession actions. Defendants YYVC, Han Kuk Chun and Tetsuo Yasuda raise the same argument in motion 4. All Defendants joined in one or more of these motions. In motion 3, Defendants contend that Plaintiffs' claims in this action are barred by Plaintiffs' state court action. All Defendants joined in this motion.

Generally, the doctrine of "res judicata" or former adjudication prevents parties from relitigating claims or issues that have already been decided by a competent tribunal. *Santos v. State of Hawaii,* 64 Haw. 648, 652, 646 P.2d 962 (1982); *Dowsett,* 7 Haw. App. at 643–46, 791 P.2d 398 (1990). It protects the integrity of the courts and promotes reliance upon judicial pronouncements by requiring that the decisions and findings of the courts be accepted as undeniable legal truths. Res Judicata furthers the finality of legal disputes and eliminates the time and expense of relitigation by requiring that parties bring all claims arising out of a transaction, or series of connected transactions, in one action.

In the federal courts, the doctrine of "res judicata" arises from the Full Faith and Credit Clause of the United States Constitution. The statute implementing the Full Faith and Credit Clause requires that

7. In response to these motions, Plaintiffs make several arguments that can be dealt with summarily. First, Plaintiffs contend that summary judgment is inappropriate because some of the Defendants asserted the Fifth Amendment during their depositions. This argument is clearly without merit. Defendants' subsequent assertion of their right to be free from self incrimination cannot possibly impact the preclusive effect of prior decisions by a competent tribunal.

Second, Plaintiffs argue that Defendants waived their right to assert issue preclusion by not raising it in their answer. This argument is without merit. Plaintiffs admit that Defendants raised an affirmative defense of res judicata. The term res judicata is often used to encompass both issue and claim preclusion. *Migra v. Warren City School District,* 465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 894 n. 1, 79 L.Ed.2d 56 (1984); *Robi v. Five Platters, Inc.,* 838 F.2d 318, 320 (9th Cir.1988); *In the Matter of the Dowsett Trust,* 7

Haw.App. 640, 644 n. 2, 791 P.2d 398 (1990). Plaintiffs also contend that Defendants' assertion of this affirmative defense was premature because the state courts had not yet ruled on the state actions. This contention is likewise without merit. Plaintiffs' state court action was pending when Defendants filed their answer. Accordingly, it was appropriate for Defendants to raise the defense of res judicata at that time. If the actions were not final by the time this court considered their preclusive effect, the defense would simply fail.

Third, Plaintiffs argue that the Court should not give the prior actions preclusive effect because they have discovered new evidence since those decisions were rendered. This alleged discovery, however, does not alter the preclusive effect of the prior decisions. If anything, the evidence provides Plaintiffs a grounds for challenging the validity of the actions in the state courts.

federal courts give state court proceedings "the same full faith and credit ... as they have by law or usage in the courts of such State ... from which they are taken." 28 U.S.C. § 1738. *Migra v. Warren City School District Board of Education,* 465 U.S. 75, 80, 104 S.Ct. 892, 895–96, 79 L.Ed.2d 56 (1984); *Robi v. Five Platters, Inc.,* 838 F.2d 318, 322 (9th Cir.1988). To determine whether a state decision precludes a party from litigating a claim or issue, federal courts must apply the res judicata rules of the state court in which the prior judgment was rendered. *Migra,* 465 U.S. at 81, 104 S.Ct. at 896; *Robi,* 838 F.2d at 322. In the case at bar, Defendants assert that Plaintiffs' claims are precluded by various Hawaii state court actions. Accordingly, this Court must apply Hawaii's res judicata rules.

■■■ "Res judicata" encompasses two distinct types of preclusion—claim preclusion and issue preclusion.[8] *Santos v. State of Hawaii,* 64 Haw. 648, 652, 646 P.2d 962 (1982); *Dowsett,* 7 Haw.App. 640, 644, 791 P.2d 398 (1990). According to the doctrine of claim preclusion

> [t]he judgment of a court of competent jurisdiction is a bar to a new action in any court between the same parties or their privies concerning the same subject matter, and precludes the relitigation not only of the [claims] which were actually litigated in the first action, but also of all grounds of claim and defense which might have been properly litigated in the first action but were not litigated or decided.

*E.g., Dowsett,* 7 Haw.App. at 644, 791 P.2d 398 (citing *In re Bishop Estate,* 36 Haw. 403, 416 (1943). Claim preclusion thus bars plaintiffs from pursuing successive suits where the claim was either litigated or could have been litigated in the first action. It also bars defendants from pursuing a subsequent action that could have been raised as a defense or counterclaim in the first suit. By contrast, issue preclusion only bars relitigation of particular issues actually litigated and de-

cided in the prior suit. *Id.* at 644, 791 P.2d 398. Issue preclusion may be asserted in a subsequent action on a totally different claim.

## A. CLAIM PRECLUSION

■■■ Claim preclusion is applicable only where (1) the claim asserted in the action in question was or could have been asserted in the prior action; (2) the parties in the present action are identical to, or in privity with, the parties in the prior action; and (3) a final judgment on the merits was rendered in the prior action. *Santos,* 64 Haw. at 653, 646 P.2d 962.

### 1. Same Parties

■■■ Claim preclusion requires that the parties to the second action are the same as, or in privity with, the parties to the first action. *Dowsett,* 7 Haw.App. at 646, 791 P.2d 398. Whether sufficient privity exists to bind a nonparty to a judgment is determined under the circumstances in each case as it arises. *Id.* Under Hawaii law, "the concept of privity has moved from the conventional and narrowly defined meaning of 'mutual or successive relationship[s] to the same rights of property' to 'merely a word used to say that the relationship between the one who is a party of record and another is close enough to include that other within the res adjudicata.'" *Id.* The party asserting claim preclusion must demonstrate that the interests of the nonparty were adequately represented and that the nonparty's rights were afforded proper protection in the prior action. *Id.*

■■■ Although a close family relationship is one factor that a court may consider in determining privity, under Hawaii "res judicata" principles, such ties alone are not sufficient to bind a nonparty to a judgment. *Id.* (privity was not established by mother-child relationship where interests were divergent; mother had an interest in the trust income and children had an interest in the trust

<hr>

8. Issue preclusion and claim preclusion have historically been called collateral estoppel and bar or merger respectively. "Res judicata" has also been used narrowly on occasion to refer solely to claim preclusion. Both the United States Supreme Court and the Ninth Circuit, however, have indicated a preference for the use of the modern terms of issue and claim preclusion to avoid confusion. *Migra,* 465 U.S. at 77 n. 1, 104 S.Ct. at 894 n. 1; *Robi,* 838 F.2d at 320; *see also, Dowsett Trust,* 7 Haw.App. 640, 644 n. 2, 791 P.2d 398 (1990).

corpus). Rather, the party asserting claim preclusion must demonstrate that the interests of the nonparty were adequately represented and that the nonparty's rights were afforded proper protection in the prior action. *Id.*

The Ninth Circuit has held that a nonparty may be bound if a party is so closely aligned with the nonparty as to be its "virtual representative." *United States v. ITT Rayonier, Inc.,* 627 F.2d 996 (9th Cir.1980); *Jackson v. Hayakawa,* 605 F.2d 1121, 1126 (9th Cir. 1979). Some courts have suggested that the concept of virtual representation contemplates an "express or implied legal relationship by which parties to the first suit are accountable to non-parties who file a subsequent suit with identical issues." *ITT Rayonier, Inc.,* 627 F.2d at 1003. In practice, however, courts that have used the term "legal relationship" have applied it quite loosely. In the *ITT Rayonier* case itself, for example, the Ninth Circuit held that the EPA was bound by an enforcement action brought by the Department of Energy in an earlier state proceeding. The court backed away from requiring a strict agency relationship between the DOE and the EPA. Instead, the court focused on the fact that the interests of the DOE and the EPA were identical and their involvement substantially similar, that they maintained the same position with respect to the action, and that they shared more than "an abstract interest" in enforcement. *Id.* at 1003. The court emphasized that the relationship between the DOE and the EPA "however it may be labeled" was sufficiently close so as to preclude relitigation. *Id.*

The Ninth Circuit's decision in *Jackson,* 605 F.2d at 1121 is particularly instructive. In *Jackson,* students and a former college instructor brought a civil rights action charging that the college president and others had violated their First Amendment rights by having them arrested after a campus rally. The district court held that the *Jackson* plaintiffs were bound by an earlier decision in which the a different group of students unsuccessfully challenged arrests arising out of the same incident. Although the plaintiffs in the initial action had never been certified

as a class, the Ninth Circuit affirmed the lower court's decision, holding that the plaintiffs were bound by the doctrine of virtual representation because they were attempting to vindicate the same rights as the plaintiffs in the earlier action. *Id.* at 1126.

The Ninth Circuit's doctrine of virtual representation is in accord with Hawaii's requirement that a non-party's interests must have been adequately represented and that his or her rights must have been afforded proper protection in the prior action. Where a party to the action shared identical or substantially similar interests or was attempting to vindicate the same rights, and stood in the same position as a non-party, the rights and interests of the non-party would be adequately represented and protected.

### 2. *Same Claim*

The Hawaii courts follow the Second Restatement's transactional view of "same claim" for purposes of claim preclusion. *Kauhane v. Acutron Company, Inc.,* 71 Haw. 458, 464, 795 P.2d 276 (1990). Accordingly, to determine whether a litigant is asserting the "same claim" in a second action, Hawaii courts look to whether the claim arises out of the same transaction or the same series of connected transactions out of which the first action arose. *Id.;* Restatement (Second) of Judgments § 24 (1982) [hereinafter "Restatement § 24"]. The claim extinguished by an action "includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions." Restatement § 24. This inquiry is made based on the facts of the transaction and does not depend on the number of substantive theories, or variant forms of relief flowing from those theories, that may have been available to the plaintiff; the number of primary rights that may have been invaded; or the variations in the evidence needed to support the theories or rights. *Id.* at 463 n. 6, 795 P.2d 276; Restatement § 24 comment at 197.

Accordingly, a plaintiff cannot avoid the bar of claim preclusion merely by alleging conduct that was not alleged in his prior action or by pleading a new legal theo-

ry. *McClain v. Apodaca,* 793 F.2d 1031, 1034 (9th Cir.1986). All claims arising from a single injury must be raised in a single action or they will be barred by res judicata. *Silver v. Queen's Hospital,* 63 Haw. 430, 437, 629 P.2d 1116 (1981). This is true even where some of the claims arise under state law and some arise under federal law. *Id.* (actions under federal civil rights act and state conspiracy and antitrust law arising from a single injury should be raised in a single action). Moreover, because claim preclusion bars all claims and defenses which could have been brought, it bars claims and defenses which were voluntarily withdrawn if a final judgment is rendered on the remainder of the case. *Hall v. State of Hawaii,* 7 Haw.App. 274, 283, 756 P.2d 1048 (1988).

### 3. *Final Judgment on the Merits*

#### a. *On the merits*

 Clearly, either a bench or jury trial is an adjudication on the merits of a case. *See, Morneau v. Stark Enterprises, Ltd.,* 56 Haw. 420, 421, 539 P.2d 472. Likewise, rulings on summary judgment motions are an adjudication of the merits of the disputed issues. *See Hall,* 7 Haw.App. at 277, 283, 756 P.2d 1048. Under Hawaii law, it is equally settled that a dismissal with prejudice is an adjudication on the merits of all issues that were raised or could have been raised in the pleadings. *E.g., Land v. Highway Construction,* 64 Haw. 545, 551, 645 P.2d 295 (1982); *Caires v. Kualoa Ranch, Inc.,* 6 Haw.App. 52, 56, 708 P.2d 848 (1985). H.R.C.P. Rule 41(b) and Fed.R.Civ.P. Rule 41(b) provide for involuntary dismissal when a plaintiff fails to comply with the rules or with an order of the court. *Silver v. Queen's Hospital,* 63 Haw. 430, 440, 629 P.2d 1116 (1981). These rules specifically provide that such dismissal operates as an adjudication on the merits:

> Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, for improper venue, or

for failure to join a party under Rule 19, operates as an adjudication upon the merits.

H.R.C.P. 41(b). The United States Supreme Court has similarly held that dismissal under Fed.R.Civ.P. 12(b)(6) is a judgment on the merits. *Federated Department Stores, Inc. v. Moitie,* 452 U.S. 394, 399 n. 3, 101 S.Ct. 2424, 2428 n. 3, 69 L.Ed.2d 103 (1981). Rule 29 of the Hawaii Rules of Circuit Courts provides that actions may be dismissed with prejudice for want of prosecution where all defendants are in default and if the plaintiff fails to apply for default judgment within a specific time period. The Hawaii courts have held that dismissal for want of prosecution pursuant to Circuit Court Rule 12 also operates as a dismissal with prejudice and thus precludes a party from relitigating claims which were or could have been brought in the dismissed action. *Lundburg v. Stinson,* 5 Haw.App. 394, 400, 695 P.2d 328 (1985).[9]

 The Hawaii Court of Appeals has also given preclusive effect to a default judgment. *Quality Sheet Metal v. Woods,* 2 Haw.App. 160, 164, 627 P.2d 1128 (1981). The court noted that the time for the defaulting party to assert its defenses was in the prior action. To permit it to later assert those claims would in effect reverse the default judgment. Hawaii courts would apparently likewise grant preclusive effect to prejudicial consent judgments. *See, Dowsett,* 7 Haw.App. at 645, 791 P.2d 398 (citing *Sullivan v. Easco Corp.,* 662 F.Supp. 1396, 1408 (D.Md.1987) (a stipulation of dismissal with prejudice constitutes a final judgment on the merits for the purpose of claim preclusion)). Dismissal of an entire complaint without prejudice, by contrast, does not operate as an adjudication on the merits and thus does not bar a subsequent action on the same claim. *Land,* 64 Haw. at 551, 645 P.2d 295.

#### b. *Finality*

 Under Hawaii law, a judgment is final for purposes of res judicata where the time to appeal has expired without an appeal being taken. *Glover v. Fong,* 42 Haw. 560

---

9. In September, 1990, the Hawaii legislature amended Rule 12 to provide that a dismissal for want of prosecution *where no pretrial statement*

*has been filed* is without prejudice. Rules of Circuit Courts, Rule 12(q) (emphasis added).

(1958). A Hawaii appellate court has noted that it follows "that where an appeal has been taken, a judgment of the trial court is not final, at least for purposes of res judicata." *Littleton v. State of Hawaii,* 6 Haw. App. 70, 75, 708 P.2d 829 (1985). The Hawaii Supreme Court apparently concurs. *See, Kauhane,* 71 Haw. at 465, 795 P.2d 276 (circuit court's judgment became final for res judicata purposes once plaintiff's appeal was withdrawn); *Silver,* 63 Haw. at 440, 629 P.2d 1116 (district court's judgment was finalized by the Supreme Court's denial of certiorari); *City and County of Honolulu v. Kam,* 48 Haw. 349, 358 n. 17, 402 P.2d 683 (1965) (issue of whether there was a garnishable debt became res judicata on affirmance of the judgment).

Defendants urge this Court to find that a judgment is final for purposes of res judicata pending appeal based on *In re Chong,* a decision by the United States Bankruptcy Court for the District of Hawaii. 16 B.R. 1 (Bkrtcy.D.Hawaii 1980). The bankruptcy court cited a Hawaii case, *Solarana v. Industrial Electronics,* 50 Haw. 22, 428 P.2d 411 (1967), for the proposition that an appeal from a judgment does not vacate the judgment appealed from, and then presumed that the appeal would likewise not affect the res judicata effect of a judgment. *In re Chong,* 16 B.R. at 3–4. A close reading of *Solarana,* however, reveals that the Hawaii court did not suggest that a judgment should be given res judicata effect pending appeal. *See Solarana,* 50 Haw. at 30, 428 P.2d 411. Rather, the court stated that:

> [W]hen an appeal from the dismissal of the first suit has been taken and is pending so that it ultimately may result that the subject matter of the second suit becomes triable in the first suit, the proper remedy is not a [dismissal] but instead a motion for stay of the proceedings in the second suit.

This language indicates that the *Solarana* court intended that pending actions which might be barred by the res judicata effect of a case on appeal should be stayed until the appeal was finalized and the decision could be given res judicata effect.

Defendants further cite to federal cases establishing the general rule adopted by federal courts that a judgment is final for purposes of res judicata despite the pendency of an appeal. *See Hawkins v. Risley,* 984 F.2d 321, 324–25 (9th Cir.1993); *Robi,* 838 F.2d at 327; 1 Rest.2d, Judgments § 13, cmt. f at 135 (1985); *United States v. Tropic Seas,* 887 F.Supp. 1347 (D.Hawaii 1995) (citing *Hawkins v. Risley* for federal rule that the preclusive effect of a lower court judgment is not suspended by an appeal). In the case at bar, however, the Court is determining the preclusive effect of a state court action and must apply the res judicata principles adopted by the Hawaii courts.

## B. *ISSUE PRECLUSION*

■ Issue preclusion requires that (1) the issue decided in the prior adjudication is identical with the one presented in the present action; (2) the party against whom issue preclusion is asserted was a party to the prior action or in privity with a prior party; and (3) there was a final judgment on the merits. *Santos,* 64 Haw. at 653, 646 P.2d 962.

### 1. *Same Parties*

■ The privity rules for claim preclusion and issue preclusion are identical. Additionally, Hawaii law permits issue preclusion to be raised defensively by one who was not a party to the prior action. *Morneau,* 56 Haw. at 423, 539 P.2d 472. Defensive issue preclusion may only be asserted against someone who was a party, or in privity with a party, to the prior suit. *Id.*

### 2. *Identical Issue*

■ In contrast to claim preclusion, issue preclusion does not bar litigation of all claims that were or could have been asserted. Rather, it only prevents a party from relitigating an issue which was actually raised, litigated and decided in the prior action. *Dowsett,* 7 Haw.App. at 640, 791 P.2d 398. Hawaii courts have generally interpreted "actually litigated" as requiring that the party against whom preclusion is sought had a "full and fair opportunity" to litigate the issue in the earlier case. *Morneau v. Stark Enterprises, Ltd.,* 56 Haw. 420, 423, 539 P.2d 472 (1975).

### 3. *Final Judgment*

▮▮▮▮ Application of issue preclusion, like claim preclusion, requires that a final judgment was rendered in the first action. The inquiry of whether a judgment is final for purposes of issue preclusion purposes is identical to the discussion above for claim preclusion. Because issue preclusion only precludes issues that were actually litigated and decided, however, the inquiry of whether a decision is "on the merits" may be answered differently. For example, a stipulated dismissal or judgment will generally not support a claim of issue preclusion because the issues would not have been actually litigated and decided. *Dowsett,* 7 Haw.App. at 645, 791 P.2d 398. By contrast, parties are precluded from relitigating issues decided at summary judgment because they had a full and fair opportunity to address the merits of the issues at this stage.

### C. *EFFECT OF PLAINTIFFS' STATE COURT ACTION*

On November 10, 1988, most of the Plaintiffs ("State Court Plaintiffs") filed an action against YYVC and Han Kuk Chun ("State Court Defendants") in the Circuit Court of the First Circuit of the State of Hawaii. In their complaint, State Court Plaintiffs alleged claims of defamation, slander, violation of contract, intentional infliction of mental and physical duress and wrongful conversion against State Court Defendants for their activities in connection with obtaining the Conditional Use Permit and attempting to evict the tenants. In particular, State Court Plaintiffs claimed that they were third party beneficiaries of the CUP as successors in interest to that agreement, that State Court Defendants failed to inform them that they had a right to be relocated under the CUP and that Defendants removed them from the property in violation of the CUP. State Court Plaintiffs claimed to have suffered loss of economic income from "attempting to comply with the defendants non-conforming demands for relocation" and further economic loss and physical damage from "not being relocated as required under the CUP and from being threatened with eviction by the Defendants or by being evicted in violation of the CUP." Plaintiffs claimed to have lost their homes, livestock, agricultural products, equipment and profits related thereto. Plaintiffs expressly declined to assert their claims of adverse possession in this action.

On June 22, 1989, the state court entered an order of dismissal for want of prosecution pursuant to Circuit Court Rule 29, granting State Court Plaintiffs five days to show good cause why the case should not be dismissed.[10] Plaintiffs responded that they had delayed acting because they were considering incorporating the matter into the RICO suit which they had filed in the federal district court. This response was accompanied by an affidavit of Thomas Lavigne, then paralegal for Plaintiffs' attorney. The state court subsequently withdrew its order of dismissal and Defendants filed an answer.

On November 10, 1989, the state court entered a notice of proposed dismissal pursuant to Circuit Court Rule 12, warning Plaintiffs that the action would be dismissed with prejudice unless they filed objections showing good cause within 10 days. This time, Plaintiffs responded that they had delayed acting because they were considering joining the state court action and the federal action "for judicial economy." The state court withdrew its notice of proposed dismissal.

On February 7, 1990, Plaintiffs filed a pretrial statement in the state court action. This pretrial statement bore the name and address of Thomas Lavigne, then co-counsel of Plaintiffs. On August 2, 1991, the state court once again issued an order of dismissal, noting that "cases dismissed with prejudice for want of prosecution can be reinstated by way of objection to the Order of Dismissal within ten days." After Plaintiffs failed to object, the Court issued a final order of dismissal on August 22, 1991.

### 1. *Claim Preclusion*
#### a. *Same Parties*

▮▮▮ State Court Plaintiffs brought their action against Han Kuk Chun and YYVC.

---

10. Rule 29 of the Rules of the Circuit Courts provides that "a case may be dismissed with prejudice for want of prosecution after notice of not less than 5 days where all defendants are in default and if the plaintiff fails to obtain entry of default and fails to apply for default judgment within six months after all defendants are in default."

These parties were likewise named in the current action before this Court. Accordingly, Han Kuk Chun and YYVC may invoke claim preclusion to estop State Court Plaintiffs, and those in privity with them, from relitigating the claims brought in the state action. Likewise, those in privity with Han Kuk Chun and YYVC may assert claim preclusion to prevent State Court Plaintiffs, and those in privity with them, from relitigating those claims.

■ Tetsuo Yasuda, Masanori Kobayashi and Yoshinori Hayashida, all sued in their capacity as "officers" of Defendant YYVC, are clearly in privity with the corporation. Their interests and involvement in the alleged events are identical to that of YYVC and they stand in the same position with respect to these actions as the corporation. Accordingly they may invoke claim preclusion to the same extent as YYVC.

■ Defendants Hiroshi Kobayashi, Eugene Lum and Norma Lum are all named both personally and as agents for corporate Defendant YYVC. However, the allegations against them pertain solely to their actions as agents for YYVC. Clearly, with respect to these activities, their interests and involvement are substantially the same as that of the corporation. They also stand in the same position as the corporation with respect to these actions. Therefore, the Court finds that these Defendants are in privity with YYVC and may invoke claim preclusion to same extent as YYVC.

■ Defendant Fasi is not in privity with Defendant YYVC or Han Kuk Chun and therefore may not invoke the doctrine of claim preclusion.

■ All State Court Plaintiffs are clearly subject to claim preclusion based on the state court action. Likewise, Plaintiffs who were not party to the state court action are bound by the doctrines of privity and virtual representation. The interests of these non-party Plaintiffs are essentially identical to the State Court Plaintiffs': they share the same attorney in the current action and are all trying to vindicate the same rights and interests that were at issue in the prior action. Therefore, the Court finds that the interests of the non-party Plaintiffs were adequately represented and their rights afforded proper protection in the state action.

#### b. *Same Claim*

■ The fact that State Court Plaintiffs brought state common law claims in their state action and RICO claims in their federal action is not a defense to claim preclusion. Because these claims all arose out of Defendants' attempt to relocate and evict the tenants from the property, Plaintiffs could and should have brought the claims together in one action. The state law claims and RICO claims involve the same acts—Defendants' alleged violation of the CUP and failure to inform the tenants of their alleged rights as third party beneficiaries under the CUP. Plaintiffs are likewise seeking to redress the same injury in both actions—eviction from the property, loss of homes, livestock, agricultural products, equipment and profits related thereto. Tenants cannot avoid claim preclusion in this Court simply by alleging new conduct (i.e. bribery, threats and mail fraud) or pleading a new legal theory (i.e. RICO), or by deleting a theory (i.e. slander) from the second action.

Because state and federal courts share concurrent jurisdiction over RICO claims, State Court Plaintiffs could have raised their federal claims in their state court action. *Tafflin v. Levitt*, 493 U.S. 455, 460, 110 S.Ct. 792, 795–96, 107 L.Ed.2d 887 (1990); *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir.1987). Conversely, they could have sought supplemental jurisdiction over the state court claims in federal court. 28 U.S.C. § 1367.[11] Instead, Plaintiffs chose to split their claims and simultaneously seek relief in both the state and federal courts, thus causing dupli-

---

**11.** In fact, in 1989, Plaintiffs indicated to the state court that they were considering such action, but had decided not to. In this Court's Order filed December 18, 1990, the Court refused to assert supplemental jurisdiction over Plaintiffs' other state court claims. However, this was because the Court found the allegations concerning the state claims to be "woefully inadequate." The Court was unwilling to waste time and resources allowing Plaintiff's to amend their complaint for the fifth time.

cated efforts and wasting judicial resources. Because Plaintiffs chose to pursue two concurrent actions, the final decision rendered in the state court prior to completion of the federal action became the full measure of relief to be accorded between the parties. The state decision thus precludes Plaintiffs from further litigating their claims in this Court.

### c. *Final Decision on the Merits*

 The state court's order of dismissal, filed August 2, 1991, indicated that Plaintiffs' state court action would be dismissed with prejudice if Plaintiffs did not show good cause for their failure to act within 10 days. After Plaintiffs did not respond, the state court entered a final order dismissing the action on August 22, 1991.[12] Plaintiffs do not dispute that the dismissal was with prejudice for failure to prosecute the case, *see Compass Development, Inc. v. Blevins,* 10 Haw. App. 388, 391, 876 P.2d 1335 (1994), and that such a dismissal acts as a final decision on the merits for purposes of res judicata. Rather, Plaintiffs contend that the state court's dismissal of their action should not be given preclusive effect because one of their attorneys, Anthony Locricchio, did not timely receive a copy of the order of dismissal or final order of dismissal. The Court notes that Plaintiffs' do not deny that their co-counsel, Thomas Lavigne, timely received the orders.

The Court finds that Plaintiffs' argument pertains to the validity of the state court's decision and is not relevant to the preclusive impact of that decision in this Court. If Plaintiffs believed that the dismissal of their action was improper, their appropriate remedy was to file a motion to set aside the state court's order or to appeal the order before the state court. *See Compass Development,* 10 Haw.App. at 396, 876 P.2d 1335; *Lim v. Harvis Const. Inc.,* 65 Haw. 71, 72, 647 P.2d 290 (1982). Having failed to do so, Plaintiffs cannot now resort to a collateral attack of the state court judgment in this Court.

The Court further finds that Plaintiffs' argument as to the validity of the state court's

dismissal lacks merit. Rule 4 of the Hawaii Rules of Civil Procedure provide that "every order required by its terms to be served ... shall be served upon each of the parties affected thereby." Where the party is represented by an attorney, "service shall be made upon the attorney ... by mailing it to him at his last known address." H.R.C.P. 4(b). Rule 4 further provides that "service by mail is complete upon mailing." *Id.; Korean Buddhist Dae Won Sa Temple of Hawaii, Inc. v. Zoning Board of Appeals of the City and County of Honolulu,* 9 Haw.App. 298, 304, 837 P.2d 311 (1992).

Plaintiffs do not dispute that copies of the dismissal orders were mailed to Anthony Locricchio at 47–677 Hui Kelu St., # 1, Kaneohe, HI 96744, the address of Locricchio's co-counsel, Thomas Lavigne. This address appeared on the heading of documents filed by Plaintiffs in both their state court case and the current action before this Court. Plaintiffs' pretrial statement, filed in the state court action on February 7, 1990, lists "Locricchio & Lavigne" as attorneys for Plaintiffs and gives the names and addresses of both attorneys. Defendants YYVC et al. reply to Motion 3, Exhibit A. Likewise, documents filed in this Court shortly before and after the state court dismissed Plaintiffs' action on August 22, 1991, list Thomas Lavigne as co-counsel, bear the signature of Thomas Lavigne and give the same Kaneohe address. *See* Plaintiffs' Amended Certificate of Service, filed June 26, 1991; Plaintiffs' Response, filed Aug. 1, 1991, Plaintiffs' Notice of Appeal, filed Oct. 4, 1991; Plaintiffs' Notice of Appeal, filed Oct. 30, 1991. Thomas Lavigne's name also appears on the state court docket sheet in connection with filing of documents in the state court. Defendants YYVC et al. Motion 3, Exhibit I.

The Court notes that Plaintiffs had previously responded to several orders by the state court threatening dismissal of their action for lack of prosecution. Clearly, Plaintiffs' attorney was on notice that if he didn't move this case along it would be dismissed. Yet, several years after the state court en-

---

12. The Court notes that Rule 12(q) of the Hawaii Rules of the Circuit Courts, providing for dismissal for lack of prosecution *prior to the filing of* a pretrial statement is not applicable because Plaintiffs had filed such a statement on February 7, 1990 (emphasis added).

tered a final order of dismissal, he has still never moved to have the case reopened. Therefore, the Court finds that the state court's dismissal of Plaintiffs' action precludes relitigation of the same claims in this Court.

### 2. *Issue Preclusion*

■■■ Because this action was dismissed for lack of prosecution none of the issues in the suit were actually decided by the state court. Therefore, issue preclusion is not appropriate with respect to this action.

### D. *EFFECT OF SUMMARY POSSESSION ACTIONS*

The named tenants each filed six counterclaims in response to YYVC's summary possession actions.

### (1) *Leases Under an Option Contract*

In their answers to the summary possession actions, the tenants claimed that they were parties and/or beneficiaries under an option contract. According to the tenants, YYVC "conditionally promised [tenants], both verbally and in writing, that [tenants] could remain on the property ... if they abstained from opposing, and if [tenant] Leonard Wong testified in favor of [sic] [YYVC's] golf course project at the CUP public hearing." The tenants claimed that these promises grant them the right to renewable leases of the property.

■■■ On November 1, 1990, YYVC filed a motion to dismiss this defense and counterclaim for failing to satisfy the statute of frauds. According to Hawaii law, leases for real property which extend beyond one year are unenforceable unless (1) in writing, and (2) signed by the party charged. Tenants opposed YYVC's motion claiming that the statute of frauds was satisfied by the Conditional Use Permit and that the doctrine of part performance removed the agreement from the statute of frauds.

On May 29, 1991, the District Court for the First Circuit of the State of Hawaii granted YYVC's motion to dismiss this counterclaim with prejudice. The state court issued a minute order stating that "having considered the Exhibits, Affidavits and Memoranda submitted, together with the Arguments of Counsel, and further being fully advised in the premises, and good cause appearing therefore, it is, ordered [that] ... [tenants'] first ... defense and counterclaim[ ] is dismissed with prejudice."

### (2) *Relocation Under the Conditional Use Permit*

In their answers to the summary possession actions, the tenants also claimed that they were third party beneficiaries under the conditional use permit ("CUP") permitting the development of a private golf course and country club on the property. According to the tenants, one condition of the CUP was relocation of the tenants living on the property. According to the tenants, the relocation plan provided by YYVC violated the CUP because (a) it did not provide for relocating the tenants' homes, (b) the plan offered relocation in a flood plain area not contemplated in the CUP, and (c) the plan was "unconscionable in that it is absolutely conditioned upon [tenants] waiving a multitude of rights against [YYVC] and its agents."

On November 1, 1990, YYVC filed a motion for partial summary judgment of this defense and counterclaim, arguing that the relocation offer made by YYVC was not inconsistent with the Conditional Use Permit. The CUP provided that:

> ... The applicant proposes to give tenants the option to relocate to a 50–acre portion of the project site adjacent to the residential fringe and obtain a 10–year permit to use the land for agricultural purposes.

> ... Agricultural tenants presently located within the project site shall be offered an opportunity to relocate to an adjacent area indicated for agricultural use in the Exhibit Map.

Aside from prescribing the area and specifying that the relocatees be allowed to stay for 10 years, the CUP did not restrict YYVC's authority to set the terms of its relocation proposal. YYVC's relocation plan was approved by the City and County of Honolulu. YYVC's Exhibit 7. Tenants opposed YYVC's

motion, claiming there was a factual dispute over proper interpretation of the CUP.

On May 29, 1991, the District Court for the First Circuit of the State of Hawaii granted YYVC's motion for summary judgment as to the second defense and counterclaim in a minute order as described above.

### (3) Adverse Possession

Certain of the tenants also defended against the summary possession actions by asserting a claim for title to YYVC's property under the law of adverse possession.

On November 1, 1990, YYVC filed a motion to dismiss this defense and counterclaim for failure to comply with H.R.S. 12.1, which requires that a party raising the defense submit affidavits describing the nature and extent of the land in question. According to YYVC, the tenants claim of adverse possession was insufficient because they had not, and could not, come forward with evidence of the precise location or boundaries of the land they allegedly possessed. The tenants opposed this motion, arguing that the defense was valid and that they had complied with rule 12.1.

On May 29, 1991, the District Court for the First Circuit of the State of Hawaii granted YYVC's motion to dismiss this defense and counterclaim with prejudice in a minute order as described above.

### (4) Breach of Covenant of Quiet Enjoyment

The tenants claimed that certain acts attributable to YYVC, including "bulldozing and threatening to bulldoze homes, crops and other improvements; attempting to wrongfully evict; shooting and stealing livestock; leading Uraniumrhi to a secluded warehouse and intimidating him in attempting to force him to sign a waiver permitting [YYVC] to bulldoze Uraniumrhi's improvements and crops," breached the implied covenant of quiet enjoyment which YYVC, as the lessor, implicitly promised.

On August 13, 1991, the state district court entered an order dismissing this defense and counterclaim *without prejudice* pursuant to

H.R.C.P. 41(a)(2), prescribing voluntary dismissal by order of court.

### (5) Estoppel and Breach of Negative Covenant in Deed

In the summary possession actions, the tenants also claimed that they were beneficiaries of a deed which provided that occupants of YYVC's property would be entitled to remove improvements, including crops and trees, upon vacating the land. According to the tenants, YYVC wrongfully concealed from them their rights pursuant to that deed.

On November 1, 1990, YYVC filed a motion for partial summary judgment on this defense and counterclaim, arguing that the relocation offer made by YYVC was not inconsistent with the deed. YYVC submitted evidence showing that the relocation plan offered informed the tenants that YYVC did not claim any right to dwelling structures or other improvements, including crops. The tenants opposed this motion claiming that there was a factual dispute over whether the relocation agreement offered the tenants violated the covenant in the deed.

On May 29, 1991, the District Court for the First Circuit of the State of Hawaii granted YYVC's motion for summary judgment as to this defense and counterclaim in a minute order as described above.

### (6) State RICO

The tenants also claimed that YYVC was liable to them for violations of HRS Chapter 842, the state counterpart to the federal RICO Act. As part of their state RICO defense, tenants Raphael Kamai and Linda Augustus claimed that YYVC's conduct interfered with their relationship with a third party to sell trees to that party. Various other tenants claimed they lost farming and rental income from sales and subsistence. On August 13, 1991, the state district court entered an order dismissing the state RICO defense and counterclaim *without prejudice* pursuant to H.R.C.P. 41(a)(2), prescribing voluntary dismissal by order of court.

Subsequent to the above mentioned rulings, on September 23, 1991, the state court struck the answers and remaining counter-

claims of the following tenants after they failed to appear at their depositions noticed by YYVC:

> James Jones, Loretta Jones, Severo Duque, Cristita Bolo, Josefina Bolo, Wilfredo Bolo, Alejandro Coloyan, Ofelia Coloyan, Isidro Dilay, Margaret Dilay, Violeta Dumadag, Estrella Igarta, Sebastian Igarta, Cipriano Manuel, Frances Miguel, Jennie Olinger, Adoracion Pedrina, Francisco Pedrina, Luz Pedrina, Jocelyn Sullivan, William Sullivan, Cheryl Wong, and Leonard Wong.

The state court previously warned these tenants that this adverse action would be taken against them if they failed to appear at scheduled depositions. The state court ordered that default judgments be entered against these tenants in the summary possession actions and entered Final Judgments for Possession and Writs of Possession against the defaulting tenants. Three other tenants, Peter Barcia, Nicanor Amit, and Lorraine Dilay, stipulated to the entry of judgment for possession.

YYVC's claims against tenants Jupiterrex Uraniumrhi, Alfredo Aurio, Sr., Benita Aurio, Raphael Kamai, Linda Augustus, Milnor Lum, and Raymond Pedrina were subsequently tried. YYVC prevailed in these actions. At trial the state court concluded that:

> YYVC has met all its legal obligations under the Relocation Plan. The Plan, as written and as applied, satisfied the requirements imposed by the City and County of Honolulu under the CUP.

At this time, the state court also dismissed Kamai and Augustus' claim for tortious interference with prospective business advantage for lack of merit. Subsequently, the state court entered judgment for possession in favor of YYVC against these tenants.

YYVC asserts that their claims against John Batalona were also tried but that the court did not issue any written findings. Judgment for possession was entered against Batalona by the state court.

Tenants Alfredo and Benita Aurio, Raphael Kamai, Linda Augustus, Milnor Lum, Luz and Raymond Pedrina and Jupiterrex Uraniumrhi timely appealed from the judgments for possession and the underlying orders, including the orders granting YYVC's motion to dismiss and motion for partial summary judgment. The appeals are still pending. The remaining tenants either failed to appeal before the time for appeal expired or had their appeals dismissed.

### 1. Claim Preclusion

#### a. Same Parties

■■■ YYVC was the plaintiff in these actions and thus may clearly invoke claim preclusion to prevent the tenants involved in these actions from relitigating claims and defenses which they either raised or could have raised in that action. As discussed above, Defendants sued in their capacity as officers of YYVC, or for their alleged actions as agents of the corporation, are in privity with the corporation for purposes of claim preclusion and thus may invoke the doctrine to the same extent as YYVC. Because Defendant Fasi was neither a party to the summary possession actions, nor in privity with YYVC, he may not invoke claim preclusion to estop the tenants from litigating claims against him.

■■■ The only tenants who were not named in the summary possession actions where Rosita Uraniumrhi, Huberto Dumadag and the Estate of Laurencia Canencia. As discussed above, the Court has dismissed these parties because they were added to Plaintiffs' Fourth Amended Complaint in violation of Rule 15 and this Court's prior orders. In any event, the Court finds that Uraniumrhi and Dumadag's interests were adequately protected by their spouses and their attorney in the prior action. Likewise, the Estate's interests was adequately protected by Cristita Bolo and Lorraine Dilay, administrators of the Estate, who were also parties to the state court action. Therefore, all Plaintiffs to the current action are subject to the preclusive effect of the summary possession actions.

#### b. Same Claim

■■■ The six defenses and counterclaims asserted by Tenants in the summary possession actions were virtually identical to

the property entitlements alleged in their complaint in this action. Clearly Tenants could, and should, have asserted their federal RICO claims as a defense to this action. Not only do the state courts share concurrent jurisdiction over RICO claims; *E.g., Tafflin,* 493 U.S. at 460, 110 S.Ct. at 795–96; *Lou,* 834 F.2d at 739; state law permits defendants to a summary possession action to bring any counterclaims arising out of and referring to the land the plaintiffs are seeking possession of. *Lum v. Sun,* 70 Haw. 288, 296–97, 769 P.2d 1091 (1989); H.R.S. § 604–5(a).

#### c. *Final Adjudication on the Merits*

■ Raphael Kamai, Lynda Augustus, Alfredo Aurio, Benita Aurio and Milnor Lum have pending appeals of the state court rulings on the summary possession actions. Therefore, the summary possession actions will not have preclusive effect for these Plaintiffs.

The remaining tenants failed to timely appeal the state court summary possession actions. John Batalona went to trial and judgment was entered in favor of Defendants. Clearly a trial is a final adjudication on the merits which precludes Batalona from relitigating any claims or defenses which he could have asserted in this action. Of the remaining tenants, all but three suffered default judgments for failing to appear at their depositions. Because the default judgments serve as complete adjudications of all the rights of these tenants, they are precluded from relitigating their claims in the current action. The remaining three tenants entered stipulated judgments in favor of Defendants. Hawaii courts would likewise grant preclusive effect to these judgments. Accordingly, all tenants except those who appealed the summary possession actions are precluded by these actions from relitigating their claims in this Court.

#### 2. *Issue Preclusion*

■ Defendant Fasi may invoke defensive issue preclusion to preclude Plaintiffs from relitigating issues which were actually litigated and decided in the summary possession actions. As discussed above, all of the

Plaintiffs in the federal action were either parties, or in privity with parties, to the summary possession actions. As discussed above, however, Defendant Fasi may not assert issue preclusion against Raphael Kamai, Lynda Augustus, Alfredo Aurio, Benita Aurio or Milnor Lum because the decisions against them are on appeal.

■ With respect to the remaining Plaintiffs, Defendant Fasi may invoke issue preclusion to estop them from relitigating the issue of whether they had a right to renewable leases on the property as parties to, or beneficiaries under, an option contract. Plaintiffs had a full and fair opportunity to litigate this issue in the summary possession action in state court. YYVC moved to dismiss the counterclaim based on the leases in that action for failing to satisfy the statute of frauds. The Plaintiffs asserted two defenses to the statutes of frauds in that action: (1) that it was satisfied by the CUP, and (2) that the doctrine of part performance removed the agreement from the statute. In granting YYVC's motion, the state court necessarily rejected both defenses. If the tenants disagreed with the state court's holding, their recourse was to appeal, as several tenants did. The remaining Tenants who failed to appeal are bound by the state court's dismissal of their defense and counterclaim and are estopped from relitigating the issue of whether they had a right to renewable leases in this action.

■ These Plaintiffs are also precluded from relitigating their claims of adverse possession. Although Tenants had a full and fair opportunity to prove these claims in the state court, they failed to come forward with sufficient evidence to withstand Defendants' motion to dismiss.

■ The state court also rejected Plaintiffs' claim that Defendants' relocation plan violated the CUP and granted Defendants' motion for summary judgment on this issue. Thus, the Plaintiffs who did not appeal this decision are precluded from rehashing the issue before this Court.

Similarly, Plaintiffs may not relitigate the issue of whether the relocation agreement offered by Defendants violated the negative

covenant contained in the deed for the property. The state court rejected the tenants argument that there was a factual dispute concerning this issue and granted Defendants motion for summary judgment on the counterclaim and defense based on estoppel and breach of covenant.

Defendant Fasi cannot invoke issue preclusion to preclude Tenants from relitigating their state RICO claims or their claims that their covenant of quiet enjoyment was breached because these claims were dismissed without prejudice by the state court. Therefore, these claims were neither actually litigated nor decided in the summary possession actions. Likewise, Plaintiffs are not be precluded from litigating their federal RICO claim against Defendant Fasi because this claim was not raised in the summary possession actions. Unlike claim preclusion, issue preclusion does not preclude litigation of all claims which could have been brought in the prior action. Rather, it only precludes relitigation of issues which were actually decided by the prior court.

In conclusion, the Court GRANTS motion 3 to the effect that Plaintiffs' state court action bars all of Plaintiffs' claims against Y.Y. Valley Corporation, Han Kuk Chun, Tetsuo Yasuda, Masanori Kobayashi, Yoshinori Hayashida, Hiroshi Kobayashi, Eugene Lum and Norma Lum.

The Court GRANTS in part motions 1, 3 and 4 against all Plaintiffs except Raphael Kamai, Lynda Augustus, Alfredo Aurio, Benita Aurio and Milnor Lum. All Plaintiffs except the aforementioned are precluded by the state court summary possession actions from relitigating the following issues:

a. that Plaintiffs have no right to renewable leases on the property under an option contract;

b. that YYVC's relocation plan did not violate the CUP;

c. that YYVC's relocation plan did not violate a negative covenant contained in the deed to the property.

d. that Tenants Nicanor Amit, Cristita Bolo, Wilfredo Bolo, Josefina Bolo, Alejandro Coloyan, Ofelia Coloyan, Isidro Dilay, Margaret Dilay, Lorraine Dilay, Violeta Dumadag, Estrella Igarta, Sebastian Igarta, Jennie Olinger, Francisco Pedrina, Adoracion Pedrina, William Sullivan, and Jocelyn Sullivan did not have a claim to the property under adverse possession.

## III. IMMUNITY

Plaintiffs allege that Defendant Fasi committed bribery, aided and abetted in the commission of mail fraud, and conspired to aid and abet the commission of mail fraud. According to Plaintiffs, Defendant Fasi provided favorable treatment to YYVC as a result of bribes in the form of illegal political contributions. This favorable treatment included issuing the CUP, refraining from disclosing to Plaintiffs their rights or requiring YYVC to disclose Plaintiffs' rights as well as refusing to enforce or revoke the CUP after the developers violated the conditions of the CUP and other laws. Plaintiffs further claim that Defendant Fasi implicitly authorized the eviction of Plaintiffs, which resulted in the deprivation of their property interests, by failing to enforce the CUP and other laws violated by the developers.

In motion 5, Defendant Fasi moves for summary judgment on all claims against him on the grounds that as mayor he enjoyed absolute and/or qualified immunity from civil liability.[13]

### A. ABSOLUTE IMMUNITY

The Supreme Court has been quite sparing in its recognition of absolute immunity. *E.g., Burns v. Reed,* 500 U.S. 478, 487,

---

**13.** Fasi's claim of absolute and/or qualified immunity is in fact an argument in the alternative. His primary contention is that he "did *not* have the authority, duty or responsibility to enforce the applicant's compliance with the Conditional Use Permit ("CUP")." *See* Fasi's Memorandum In Support Of Motion 5 at 2. He states that approval of the CUP, enforcement of the CUP

conditions, and other matters associated with the CUP (including appellate review) did not involve his vote, opinion, judgment, exercise of discretion, or other action as a public servant. *Id.*

Instead, Fasi alleges, "the person who had the authority, duty, and responsibility to enforce compliance with the CUP was the Director of the DLU, *not* Fasi." *Id.*

111 S.Ct. 1934, 1939–40, 114 L.Ed.2d 547 (1991); *Hafer v. Melo*, 502 U.S. 21, 27–29, 112 S.Ct. 358, 363, 116 L.Ed.2d 301 (1991) (Auditor General not entitled to absolute immunity for administrative employment decisions); *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, —— n. 4, 113 S.Ct. 2167, 2169 n. 4, 124 L.Ed.2d 391 (1993) (court reporters not entitled to absolutely immunity). The presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties. *Burns*, 500 U.S. at 486, 111 S.Ct. at 1939. Officials seeking absolute immunity bear the burden of showing that such immunity is justified. *Id.*

▮ Whether absolute immunity is available to an official does not depend on the official's job title or agency. *Bothke v. Fluor Engineers and Constructors, Inc.*, 713 F.2d 1405, 1412 (1983); *Cinevision Corp. v. City of Burbank*, 745 F.2d 560, 579 (9th Cir.1984). The focus is on the function that the official was performing when taking the actions that provoked the law suit. *Id.; Hafer*, 502 U.S. at 29–31, 112 S.Ct. at 364. Officials performing legislative acts which involve the formulation of policy and apply to the community at large are afforded absolute immunity. *Kuzinich v. County of Santa Clara*, 689 F.2d 1345, 1349 (9th Cir.1982) (legislators who voted to enact a general zoning ordinance were entitled to absolute immunity). Those performing administrative or executive functions involving ad hoc decision making directed at one or a few individuals are not. *Trevino v. Gates*, 23 F.3d 1480, 1481 (9th 1994) (city council members who voted to pay police officers' punitive damages were not entitled to absolute immunity); *Cinevision*, 745 F.2d at 580 (council member voting to disapprove concerts was not entitled to absolute immunity); *Bateson v. Geisse*, 857 F.2d 1300, 1304 (9th Cir.1988) (city council members' who denied building permit were not entitled to absolute immunity); *Zamsky v. Hansell*, 933 F.2d 677, 679 (9th Cir.1991) (commission members who ruled on whether the county's proposed land use plan complied with existing regulations were not entitled to absolute immunity).

▮ Absolute immunity is only available when the official's conduct is within the scope of his or her official duties and when the conduct is discretionary in nature. *Westfall v. Erwin*, 484 U.S. 292, 297–98, 108 S.Ct. 580, 584–85, 98 L.Ed.2d 619 (1988). However, if an official is entitled to absolute immunity, legitimacy or illegitimacy of the official's motive is irrelevant. *E.g., Thillens, Inc. v. Community Currency Exchange Association of Illinois, Inc.*, 729 F.2d 1128, 1131 (7th Cir.1984); *Callaway v. Hafeman*, 628 F.Supp. 1478, 1487 (W.D.Wis.1986).

▮ Defendant Fasi is not entitled to absolute immunity. To the extent he acted beyond the sphere of his legitimate activity, he cannot invoke the doctrine to shield him from liability. If, on the other hand, he acted within his sphere of legitimate activity, the nature of the activities do not justify granting him absolute immunity. Plaintiffs' allegations pertain to the Department of Land Utilization's grant of a CUP to YYVC, non-enforcement of the CUP's conditions and refusal to revoke the CUP for noncompliance. Clearly enforcement or nonenforcement of the CUP involves an executive function. Likewise, the Court finds that the grant of the CUP was an administrative or executive, rather than legislative function. The grant of the permit was an ad hoc decision, aimed at permitting an individual party, YYVC, to utilize land in a particular manner. Although the CUP clearly impacted the tenant farmers living on the land, it did not create rules which are applicable to the tenant farmers or the community at large.

Fasi's reliance on *Thillens, Inc. v. Community Currency Exchange Association of Illinois, Inc.*, 729 F.2d 1128 (7th Cir.1984), is misplaced. In *Thillens*, government officials, acting within the sphere of legitimate legislative activity, attempted to use their positions to influence regulation of currency exchanges. Fasi's alleged involvement, in contrast, was executive or administrative. Accordingly, Fasi is not absolutely immune from suit for his alleged conduct.

## B. *QUALIFIED IMMUNITY*

Government officials performing discretionary functions within the scope of their authority are protected from liability for civil damages unless the law clearly proscribes the actions they took. *E.g., Harlow v. Fitzgerald,* 457 U.S. 800, 817–19, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Anderson v. Creighton,* 483 U.S. 635, 639–41, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). Whether an official is immune "turns on the objective reasonableness of their conduct in light of clearly established law, not on their subjective good faith." *Bateson,* 857 F.2d at 1304. An official who acts in good faith will only be held liable where the unlawfulness of the official's actions would have been apparent to a reasonable official in light of pre-existing law. *Anderson,* 483 U.S. at 639–41, 107 S.Ct. at 3039; *Cinevision,* 745 F.2d at 580. Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986).

In order to avoid a claim of qualified immunity, the plaintiff must prove that the law clearly established that the official's actions were unlawful at the time of the alleged misconduct. *Romero v. Kitsap County,* 931 F.2d 624, 627 (9th Cir.1991); *Han v. Department of Justice,* 824 F.Supp. 1480, 1491 (D.Hawaii 1993). To defeat summary judgment based on qualified immunity, the plaintiff "must produce evidence that would allow a fact-finder to find that no reasonable person in the defendant's position could have thought the facts were such that they justified defendant's acts." *Post v. City of Fort Lauderdale,* 7 F.3d 1552, 1557 (11th Cir.1993).

Defendant Fasi argues that he is entitled to qualified immunity because "Plaintiffs cannot prove that, at the time that Fasi allegedly acted or failed to act, the law 'clearly established' that: (1) the developer failed to comply with Condition No. 1 of the CUP or the Deed; (2) Fasi had a duty to require the developer to comply with the condition and the Deed; and (3) Fasi breached his duty which, to any reasonable official, would have been clearly apparent." This argument ignores Plaintiffs' main contention—that Fasi accepted illegal bribes and granted the developers favorable treatment in return for the bribes. If Plaintiffs' allegations are true, Defendant Fasi cannot invoke the doctrine of qualified immunity to shield him from liability for these actions. The illegality of accepting bribes in exchange for favors would have been apparent to a reasonable official in Defendant Fasi's position. If, on the other hand, Plaintiffs do not prove that Defendant Fasi engaged in the alleged conduct, he will not need immunity to protect him from liability.

In conclusion, the Court DENIES motion 5. To the extent that Defendant Fasi acted beyond the sphere of his legitimate activity, neither absolute nor qualified immunity will shield him from liability. To the extent that he acted within the scope of his authority, the administrative or executive nature of his activities do not justify granting him absolute immunity. Moreover, because the granting of favors in exchange for bribes is not "objectively reasonable in light of clearly established law," Defendant Fasi is not entitled to qualified immunity for these alleged actions.

## IV. *FEDERAL CAMPAIGN SPENDING ACT*

As part of their bribery claims Plaintiffs allege in paragraph 116 of their Complaint that:

Defendant Mayor Frank F. Fasi illegally permitted foreign money to influence, interfere and effect the election in violation of the Federal Campaign Spending Act.

In paragraph 122 Plaintiffs allege:

All bribes made to the Mayor and offered to the City were known by the Mayor to be illegal and in violation of the Federal Campaign Spending Act and were none the less accepted and used by the Mayor in his re-election campaign.

In motion 6, Defendant Fasi urges the Court to strike these allegations based on two grounds. First, Fasi argues that Plaintiffs do not have standing to assert or bring such claims before this Court and that the Court lacks subject matter jurisdiction to adjudicate these claims because they involve

alleged violations of the Federal Election Campaign Act ("FECA"). Second, Fasi argues that these allegations are in violation of this Court's Order filed April 19, 1990.

Plaintiffs contend that Defendant Fasi's standing argument is irrelevant because they are not seeking enforcement of federal election laws or a review of the findings of the Federal Election Commission ("FEC"). Rather, they are alleging violations of the FECA, already adjudicated by the FEC,[14] in support of their bribery claims.

▆▆ Although Defendant is correct in his assertion that Plaintiffs lack standing to enforce violations of the FECA, the Court agrees with Plaintiffs that standing is not an issue. Plaintiffs are not asking this Court to enforce the FECA. Rather, Plaintiffs simply allege as evidence the fact that the FEC entered Conciliation Agreements with YYVC, RHCC and the Yasuda's finding that contributions were made to Fasi and other officials in violation of the FECA. Plaintiffs do not need standing to assert these facts.

▆▆ The Court finds that the allegation contained in paragraph 122 does not violate its Order filed April 19, 1990. In that Order, the Court struck Plaintiffs' allegations concerning the claims before the FEC because Plaintiffs failed to demonstrate how the claims were related to their RICO claims. In the Fourth Amended Complaint, Plaintiffs contend that the contributions to Defendant Fasi and other public officials were bribes which serves as predicate acts under RICO. That the contributions were illegal and Defendant Fasi allegedly knew of their illegality is relevant because this fact makes it more likely that the contributions were bribes. Paragraph 116, on the other hand, alleges that Fasi allowed the illegal contributions to interfere and affect the election. This claim is not relevant to Plaintiffs' RICO action. Therefore, the Court strikes Paragraph 116.

## V. RACKETEERING INFLUENCED & CORRUPT ORGANIZATIONS ACT ("RICO")

RICO prohibits "any person" from using money derived from a pattern of racketeering activity to invest in an enterprise, to acquire control of an enterprise through a pattern of racketeering activity, or to conduct an enterprise through a pattern of racketeering activity. 18 U.S.C. §§ 1962(a)–(c). Section 1962(d) prohibits any person from conspiring to violate any of the provisions of 18 U.S.C. 1962(a), (b) or (c).

The purpose of the RICO statute is to allow a single prosecution of persons who engage in a series of criminal acts for an enterprise. *United States v. Brooklier*, 685 F.2d 1208, 1222 (9th Cir.1982). It applies even where different defendants perform different tasks or participate in separate acts of racketeering. *Id.* If a defendant is found to have violated RICO, he will be liable for all harm caused by the enterprise, regardless of whether he committed or endorsed the specific acts of racketeering which led to the injury. *See id.*

### A. PRIVATE REMEDIES UNDER RICO: 18 U.S.C. § 1964(c)

▆▆ RICO authorizes a private civil action by "[a]ny person injured in his business or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c). Private litigants have standing under RICO only to the extent that they have been injured in their business or property by the conduct constituting the RICO violation. *Sedima, S.P.R.L. v. Imrex Company*, 473 U.S. 479, 495–96, 105 S.Ct. 3275, 3284–85, 87 L.Ed.2d 346 (1985). This injury must consist of a concrete financial loss, and not mere injury to a valuable, but intangible, property interest. *Oscar v. University Students Co-op Ass'n,* 965 F.2d 783, 785, 787 (9th Cir.1992) (diminution in enjoyment of leasehold interest does not constitute a loss of a tangible property interest to tenant); *Steele v. Hospi-*

---

14. Plaintiffs have submitted Conciliation Agreements demonstrating that the FEC found "reason to believe" that Royal Hawaiian Country Club, YYVC, Tetsuo Yasuda (a.k.a. Han Soo Chun) and Yasuo Yasuda (a.k.a. Han Kuk Chun) violated 2 U.S.C. § 441e, prohibiting foreign nationals from contributing to candidates for political office. The parties participated in informal conciliation prior to a finding of probable cause and agreed to findings that the statute was violated. RHCC, YYVC and the Yasuda's were assessed civil penalties for these violations.

*tal Corporation of America,* 36 F.3d 69 (9th Cir.1994) (depletion of insurance funds by excess medical payments does not constitute a financial loss to patients). Likewise, speculative injuries do not confer standing under RICO, unless they become concrete and actual. *Steele,* 36 F.3d at 71 (claim that father of patient "could have used some of those [insurance] benefits for myself" was insufficient where father did not specify an instance where he had to pay a claim out of his own funds because the funds had been exhausted); *Oscar,* 965 F.2d at 787 (claim that plaintiff suffered losses in the reduced rent she could charge to sublet her apartment was insufficient where plaintiff did not allege that she had a right to sublet her apartment nor that she ever sublet the apartment or attempted to sublet the apartment); *Imagineering, Inc. v. Kiewit Pacific Co.,* 976 F.2d 1303, 1311 (9th Cir.1992) (claim that plaintiff suffered loss of profits was insufficient where it was impossible to determine whether plaintiffs were alleging lost opportunity to realize profits or loss of specific identifiable profits).

The compensable injury of a private litigant is the harm caused by the predicate acts. *Sedima,* 473 U.S. at 497, 105 S.Ct. at 3285. To recover, private litigants must not only show that their harm was actually caused by defendants' acts, they must also establish proximate causation. *Holmes v. Securities Investor Protection Corporation,* 503 U.S. 258, 268–70, 112 S.Ct. 1311, 1318, 117 L.Ed.2d 532 (1992). To establish proximate cause under RICO, plaintiffs must show that their injury flows directly from the defendants' commission of the predicate acts. *Id.* It is not sufficient that the injury was foreseeable; there must be a direct relationship between the injury and the prohibited conduct. *Imagineering,* 976 F.2d at 1311.

Defendants challenge both the substance of Plaintiffs' alleged injuries as well the causal link between those injuries and Defendants' alleged racketeering activities. In Motion 7, all Defendants join in arguing that Plaintiffs cannot establish that Defendants injured any rights which Plaintiffs may have had under the CUP, the negative covenant in the deed or adverse possession. In motion 8, all Defendants except Fasi contend that

Plaintiffs' claim to 10 year leases based on an oral option contract must fail because Plaintiffs cannot overcome the statute of frauds. In motion 18, Defendant Fasi, joined by the remaining Defendants, asserts that Plaintiffs cannot prove that Defendant Fasi's conduct was the proximate cause of Plaintiffs' injuries or that Plaintiffs suffered any concrete financial loss. Although the focus of Defendant Fasi's motion is on the conduct of Fasi, the Court notes that under RICO, the inquiry must include the harm caused by all of the predicate acts, regardless of which Defendants actually committed, or agreed to commit, the alleged acts.

### 1. *Entitlement to remove crops and improvements under a Negative Covenant in the deed*

Plaintiffs claim Defendants' injured their interests as beneficiaries of a deed which provided that occupants of YYVC's property would be entitled to remove improvements, including crops and trees, upon vacating the land. The negative covenant in the deed provides as follows:

> Notwithstanding the language of any lease to the contrary, all tenants and others occupying the Property, except the Hedemanns and Kakalias, shall be entitled, when they vacate the Property, to remove any improvements, including crops and trees, which they or their predecessors-in-interest have made to or placed on the Property. The Grantors shall have no obligation, liability or responsibility to the Grantee for the presence of such tenants
> . . .

According to Plaintiffs, YYVC violated this covenant by: (1) failing to inform them of their rights pursuant to this deed; (2) bulldozing and destroying their homes, crops, fish ponds and other improvements; and (3) preventing them from attending to their crops.

Defendants do not dispute Plaintiffs' claim that the deed entitled them to remove crops and improvements from the land. Rather, Defendants argue that YYVC's relocation offer fulfilled the requirements of the deed by providing Plaintiffs with an opportunity to

remove any improvements, including crops, to the new site as follows:

Notwithstanding anything to the contrary elsewhere contained in this Agreement, Eligible Occupant has executed this Agreement upon the following express understandings and conditions:

(a) That if Eligible Occupant is the owner and/or occupant of any dwelling structure, or other improvements, including crops (herein collectively "Improvements"), situated within and upon the Project Site, the title thereto or ownership thereof will not be claimed by Owner or Permittee, excepting as expressly provided in subparagraphs (c)(i) and (ii) hereafter;

(b) That Eligible Occupant may remove said Improvements within a period commencing with the date hereof to and including the shortest of:

(i) that date which is one hundred twenty (120) days from the date hereof; or

(ii) if such Improvements are situated within the area covered by the Makilii Lease (as defined in said Satisfaction Agreement), the date of execution by Owner of said Makilii Lease; or

(iii) if such Improvements are situated within the area covered by the Maunawili Lease (as defined in said Satisfaction Agreement), the date of execution by Owner of said Maunawili Lease.

(c) That if Eligible Occupant shall fail or refuse to timely remove said Improvements within the period next above described, and Eligible Occupant recognizing that time is of the essence in Owner's development and use of the lands, including Owner's obligation to execute said Makilii Lease and Maunawili Lease as set forth in said Satisfaction Agreement, said Improvements will be conclusively deemed to have been abandoned by Eligible Occupant and/or shall be deemed to have been included in the quitclaim made by Eligible Occupant as set forth in paragraph 1 of this Agreement.

Plaintiffs contend that many of them were unaware of the relocation plan and thus had no notice of their right to remove crops and improvements. This argument ignores the deep-rooted maxim of constructive notice.

Both the deed and the CUP were of public record, providing Plaintiffs notice of their rights. The Court finds it highly unlikely that Plaintiffs were not aware of the relocation plan. All Plaintiffs claim to have been aware of the CUP proceedings, indicating that they either testified at, or stayed away from, the hearings at the request of the developers. Because Plaintiffs had a stake in the outcome of the hearings, it is unfathomable that they did not keep abreast of the CUP proceedings and developments. Accordingly, the Court finds that Plaintiffs either knew, or had constructive notice of, their right to remove crops and improvements.

The right to remove crops and improvements under the deed applied only to tenants occupying the land at the time it was transferred. Moreover, it only granted tenants the right to remove items when they vacated the premises. Those tenants who vacated the property without removing crops or improvements abandoned any interest they had under the deed. Likewise, the deed does not afford any protection to Plaintiffs who failed to tend their crops or repair their homes because of the impending evictions. To the extent that any of Plaintiffs' improvements or crops were destroyed while they still occupied the premises, such injuries are protected by the implied covenant of quiet enjoyment, not the negative covenant in the deed.

Plaintiffs were all warned of YYVC's intent to remove them from the property in either late 1985 or early 1986. In 1987, Plaintiffs were again informed of YYVC's intent to seek eviction. Plaintiffs were not actually evicted, however, until 1991–92, sometime after the summary possession actions were decided. Plaintiffs thus had some five years or more in which to remove their crops and improvements from the land. For the above reasons, the Court finds that Defendants did not injure Plaintiffs' interest in removing crops and improvements under the negative covenant in the deed.

### 2. *Right to relocation under the Conditional Use Permit*

Plaintiffs claim that Defendants' injured their interests as third party beneficiaries

under the Conditional Use Permit ("CUP") which permitted the development of a private golf course and country club on YYVC's property. According to Plaintiffs, the CUP required the owners of the golf course project to grant them "unconditional" relocation with ten year leases in exchange for the owners being permitted to use the land for a conditional use. Plaintiffs claim that Defendants deprived them of their right to the 10–year leases by serving them with summary possession actions and subsequent notices to vacate the property after they refused to accept YYVC's proposed relocation plan.

■ The parties agree that the relevant provisions of the CUP provide that:

[T]he applicant proposes to give tenants the option to relocate to a 50–acre portion of the project site adjacent to the residential fringe and obtain a 10–year permit to use the land for agricultural purposes.

[A]gricultural tenants presently located within the project site shall be offered an opportunity to relocate to an adjacent area indicated for agricultural use in the Exhibit Map.

Defendants do not dispute that these provisions grant Plaintiffs the right to an opportunity to relocate on the property. Rather, Defendants contend that their relocation plan, which was approved by the City of Honolulu, complied with the CUP's conditions.[15]

■ Plaintiffs contend that the Court should not consider the DLU's acceptance of the relocation plan as evidence that the plan complied with the CUP. According to Plaintiffs, Defendant Fasi and other city officials refused to enforce the conditions of the CUP in return for alleged bribes from the developers. Assuming, without so finding, that

Plaintiffs' bribery allegations are true, the Court agrees that the DLU's approval of the relocation plan should not be considered in support of Defendants' motion. However, the Court has reviewed the other evidence before it and has made an independent determination that YYVC's relocation plan complied with the CUP. It is undisputed that the relocation plan met the explicit requirements of the CUP: the plan provided tenants an opportunity to relocate to an area of the proper size and that the tenants were to be granted 10 year leases. Moreover, the Court notes that since most of the tenants accepted the relocation, it would appear that the plan was objectively acceptable.

Plaintiffs' main objection to the plan is based upon the following release provision:

Eligible Occupant hereby releases and forever discharges Owner ... from any and all actions, causes of action, suits at law or in equity, liabilities, claims, demands or damages of whatsoever kind or nature ... which Eligible Occupant has or may have in respect of any claim to or interest in the land (including crops and improvements, excepting as hereinafter provided) comprising the Project Site or the right to control or use said land ...

The agreement further provided that the eligible occupants reserved the right to remove improvements as well as to retain claims and causes of action currently pending in this Court and the state courts except for "claims respecting any interest in the land comprising the Project Site." Thus, although the agreement protected Plaintiffs right to improvements and maintain pending actions in most respects, had Plaintiffs signed the agreement they would have waived any right of adverse possession to the portion of the property which formed the project site.

---

**15.** The Court rejects Defendants' argument that there has been a "final, adjudicated finding that the City acted properly and within its discretion in accepting the CUP in this case." Defendants are referring to the companion case of *Aurio v. Fasi*, Civil No. 90–00526, in which Plaintiffs brought an action against the City of Honolulu for inverse condemnation. The Court dismissed that action as not ripe for federal review because Plaintiffs had not yet pursued all available state remedies. In an order denying Plaintiffs' motion for reconsideration of this dismissal, the Court

noted that "Plaintiffs charge the City with unlawfully approving the relocation plan under the Conditional Use Permit ("CUP") in this case and the related RICO action of *Pedrina v. Chun*, Civ. 89–00439 ACK. Yet, all evidence before this Court shows that the City acted within their discretion and for a public purpose." This dicta by the Court on motion for reconsideration of a dismissal without prejudice does not adequately demonstrate that the issue was "actually litigated" for purposes of issue preclusion.

The Court finds that the CUP does not require Defendants to provide Plaintiffs with "unconditional" relocation. The Court finds that it was reasonable for Defendants to condition the grant of 10 year leases on Plaintiffs' waiver of possible claims to the property comprising the project site. As discussed below, the Court finds Plaintiffs' claims of adverse possession to be insubstantial and tenuous at best. *See infra*, pp. 1417–18. Moreover, in light of the numerous claims Plaintiffs have already filed against Defendants, the Court finds it was reasonable for Defendants to seek to protect themselves from further litigation once the tenants were relocated in accordance with the CUP.

Plaintiffs' concern that Defendants may claim title to their houses once they were relocated under the plan is unfounded; the plan clearly provides that Defendants relinquish any such claims. In particular, the relocation agreement provides that "the title thereto or ownership thereof (of improvements) will not be claimed by Owner or Permittee, excepting as expressly provided in subparagraphs (c)(i) and (ii)." Subparagraphs (c)(i) and (ii) provide that YYVC may claim title to improvements only where the tenants abandon them. Accordingly, if Plaintiffs had removed their improvements to a new location, they would have maintained title to the improvements.

For the above stated reasons, the Court finds that the relocation plan offered to Plaintiffs complied with the CUP. The Court also finds that Plaintiffs' alleged loss of 10 year leases under the CUP was not caused by Defendants. Plaintiffs refused Defendants' offer of relocation, thereby voluntarily relinquishing their rights under the CUP. Thus, Plaintiffs have failed to demonstrate that Defendants' actions were either the actual or proximate cause of the alleged injuries to their interests under the CUP.

### 3. *Rights under Adverse Possession*

Defendants contend that "adverse possession has been eliminated as any basis for a legitimate property interest by court order in this case." On December 18, 1990, the Court dismissed Plaintiffs' state law claims of adverse possession. Although the Court had granted Plaintiffs four opportunities to amend their complaint, Plaintiffs' claims of adverse possession were still conclusory and provided no basis for determining the merit of the claims or what land had been possessed. The Court noted at that time that even if the adverse possession claim had been adequately pled, the Court would have dismissed the claim on abstention grounds because of the ongoing state court proceedings. The Court also indicated that it would have declined to exercise supplemental jurisdiction over the adverse possession claim.

The Court's dismissal of Plaintiffs' quiet title action, however, does not necessarily eliminate Plaintiffs' claim that they had an interest in the property based on adverse possession for purposes of establishing standing under RICO. For example, had Plaintiffs established their adverse possession claims in a state court quiet title action, they could have argued before this Court that Defendants' eviction of them from the premises harmed their established interest in the property. In actuality, however, Plaintiffs have never filed a quiet title action. They also failed to establish their adverse possession claims in the summary possession actions before the state court. *See supra*, p. 1406–07. Milnor Lum is the only Plaintiff asserting an injury based on adverse possession who has appealed the state court's decision. Therefore, all other Plaintiffs are estopped from claiming that they have an interest in the property based on adverse possession.

Even if Plaintiffs were not estopped from arguing that they have a property interest under adverse possession, these claims must fail as too speculative and intangible to confer standing under RICO. As discussed above, Plaintiffs do not have an established right in the property pursuant to adverse possession. Moreover, Plaintiffs' allegations regarding these claims are conclusory and give no basis for determining the extent of the land Plaintiffs' allegedly possessed or the merits of the claims.

**1418**

### 4. *Right to 10 year leases under an option contract*

Plaintiffs claim that Defendants injured their rights to lease the property pursuant to an oral option contract wherein Defendants offered to allow the tenants to remain on the property if they did not testify against Defendants at the CUP hearing. Defendants also allegedly promised the Wongs that they would be able to remain on the property if Leonard Wong read testimony in favor of the golf course development at the CUP hearing. Defendants contend that this theory lacks merit because Plaintiffs cannot overcome the statute of frauds. In response, Plaintiffs' argue that the contract is removed from the statute because they performed their part of the agreement by abstaining from attending the CUP hearing and opposing the golf course. Plaintiff Wong alleges he performed his part of the agreement by reading testimony prepared by Defendants at the hearing.

 In Hawaii, a lease for real property which extends beyond one year must be (1) in writing and (2) signed by the party to be charged. *See* H.R.S. § 656–1; *Yee Hop v. Young Sak Cho*, 25 Haw. 494, 499 (1920). However, an oral contract with respect to an interest in land may become enforceable, in spite of the statute of frauds, where there has been part performance. *Perreira v. Perreira*, 50 Haw. 641, 642, 447 P.2d 667 (1968). The Supreme Court of Hawaii has set forth three factors for determining whether acts constituting part performance are sufficient to free a promise from the statute of fraud requirements:

(1) the acts must be pursuant to the contract;

(2) the acts must be undertaken with the knowledge and consent of the other party; and

(3) the acts must be such that to allow the other party to repudiate would be a fraud upon the plaintiff.

*Id.* at 643, 447 P.2d 667. Moreover, although forbearance to exercise a right is good consideration for a promise, mere proof of forbearance is not sufficient evidence of part performance to remove a verbal agreement performance to remove a verbal agreement from the operation of the statute of fraud. *Shannon v. Waterhouse*, 58 Haw. 4, 7, 563 P.2d 391 (1977). A party relying upon forbearance must demonstrate that the forbearance was primarily and substantially motivated by the oral agreement. *Id.*

 The policy behind enforcing oral agreements which violate the statute of frauds is to prevent fraud that would result from refusal to enforce oral contracts in certain circumstances. *McIntosh v. Murphy*, 52 Haw. 29, 35, 469 P.2d 177 (1970). "Such fraud may inhere in the unconscionable injury that would result from denying enforcement of the contract after one party has been induced by the other seriously to change his position in reliance on the contract." *Id.* (citing *Monarco v. Lo Greco*, 35 Cal.2d 621, 623, 220 P.2d 737 (1950)). "In determining whether injustice can be avoided only by the enforcement of the promise, the following circumstances are significant: (a) the availability and adequacy of other remedies, particularly cancellation and restitution; (b) the definite and substantial character of the action or forbearance in relation to the remedy sought; (c) the extent to which the action or forbearance corroborates evidence of the making and terms of the promise, or the making and terms are otherwise established by clear and convincing evidence; (d) the reasonableness of the action or forbearance; (e) the extent to which the action or forbearance was foreseeable by the promisor." *Id.* (citing Restatement (Second) of Contracts § 217A (Supp. Tentative Draft No. 4, 1969)).

██ The Court finds that Plaintiffs have failed to present clear and convincing evidence of the existence and terms of the alleged oral contract. *Boteilho v. Boteilho*, 58 Haw. 40, 42, 564 P.2d 144 (1977) (party seeking to establish a parol contract must prove its existence and its terms by clear and convincing evidence); *See also Honolulu Waterfront Limited Partnership v. Aloha Tower Development Corporation*, 692 F.Supp. 1230, 1234 (D.Haw.1988), *aff'd*, 891 F.2d 295 (9th Cir.1989) (real estate development agreement was too indefinite to be enforceable where the rent term of the provision was left for future negotiations); *Clarkin v. Reimann*, 2 Haw.App. 618, 638 P.2d 857 (1981); *Lahai-*

na–Maui Corp. v. Tau Tet Hew, 362 F.2d 419 (9th Cir.1966); In re Sing Chong Co., Ltd., 1 Haw.App. 236, 617 P.2d 578 (1980); Francone v. McClay, 41 Haw. 72 (1955). Neither Plaintiffs' failure to attend the hearings, nor Wong's testimony at the hearings, sufficiently corroborate the making and terms of the promise to remove the alleged oral agreements from the statute of frauds. Nor is the making or terms of the agreement supported by other evidence of a clear and convincing nature. Plaintiffs' allegations concerning the terms of the alleged contract are sketchy and inconsistent. Various Plaintiffs contend that in exchange for not testifying, they were promised leases of 10 years, 20 years, 55 years, "long term" or "forever."

■ In any event, as Plaintiffs contend, any oral contract between Plaintiffs and Defendants was evidenced by and merged into the CUP. Plaintiffs' Opposition to Defendants Motion 8, p. 6–7. As discussed above, the Court finds that Plaintiffs voluntarily waived their rights under the CUP by declining Defendants' offer of relocation. See supra, pp. 1415–17. Accordingly, any loss of Plaintiffs' right to leases under the alleged option contract was not caused by Defendants.

#### 5. Rights under the implied covenant of quiet enjoyment

■ Plaintiffs claim that Defendants injured their right to quiet enjoyment by destroying their crops and homes and preventing them from tending their crops and maintaining their homes. In so far as Defendants destroyed or threatened to destroy Plaintiffs' crops or homes while they were living on the property, such injury supports Plaintiffs' RICO action. However, Plaintiffs' allegations that they failed to plant or tend crops and repair their homes because they lived under a constant fear of eviction are without merit. Eviction notices and summary possession actions do not support a claim of interference with quiet enjoyment; these procedures are the legal means by which a landlord may properly remove holdover tenants from his property. Because Defendants had a right to remove Plaintiffs from the property and to inform them that

they intended to do so, Plaintiffs' fear of eviction was not a result of any illegal actions. Accordingly, Plaintiffs cannot establish a causal link between any injury allegedly resulting from such fear and Defendants' alleged racketeering activity.

#### 6. Injury to the Wongs' personal property

■ The Wongs allege that they were robbed and that their bull was shot. Clearly this alleged injury was directly caused by the alleged predicate acts of robbery and extortion and therefore supports the Wongs' RICO action.

In conclusion, the Court GRANTS motions 7 and 8 and GRANTS in part motion 18. Plaintiffs failed to establish a genuine issue of fact whether Defendants' alleged racketeering activities caused them to suffer injury to any interest Plaintiffs had under the CUP, deed or option contract. Accordingly, these alleged injuries do not support Plaintiffs' RICO action. Plaintiffs' claims of injury to possible interests based on a theory of adverse possession also fail to support their RICO action. Plaintiffs have raised a genuine issue of fact whether Defendants' racketeering activities caused injury to Plaintiffs' rights under the implied covenant of quiet enjoyment. Likewise, the alleged injuries to the Wongs' property and bull support their RICO action.

#### B. 18 U.S.C. § 1962(c)

■ Section 1962(c) of RICO makes it unlawful for:

... any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity ...

Liability under § 1962(c) requires: (1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity. Sedima, 473 U.S. at 496, 105 S.Ct. at 3285.

### 1. *Conduct of an Enterprise*

In motion 15, Defendant Fasi contends that he cannot be held liable under 18 U.S.C. § 1962(c) because he did not participate in the operation or management of Royal Hawaiian Country Club ("RHCC"), the enterprise. Although Defendants Masanori Kobayashi and Yoshinori Hayashida joined in this motion, they did not brief the issue of their own participation in the affairs of RHCC. Therefore, the Court will only consider this motion with respect to Defendant Fasi.

The Supreme Court recently held that only persons participating in the operation or management of the enterprise itself may be held liable under 18 U.S.C. § 1962(c). *Reves v. Ernst & Young,* 507 U.S. 170, 184–85, 113 S.Ct. 1163, 1173, 122 L.Ed.2d 525 (1993). The *Reves* Court examined the plain language of RICO and concluded that the words "in the conduct of such enterprise's affairs" require some degree of direction and the words "to conduct or participate" require that a Defendant take some active part in that direction. *Id.* at 179, 113 S.Ct. at 1170. In order to "conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs," a person must have a part in directing the operation or management of those affairs. *Id.*

This "operation and management" test does not require that a person have primary responsibility for the enterprise's affairs or hold a formal position in the enterprise. *Reves,* 507 U.S. at 179–80, 184–85, 113 S.Ct. at 1170, 1173. "An enterprise is 'operated' not just by upper management but also by lower-rung participants in the enterprise who are under the direction of upper management." *Id.* at 184, 113 S.Ct. at 1173. "An enterprise might also be 'operated' or 'managed' by others 'associated with' the enterprise who exert control over it as, for example, by bribery." *Id.* Thus, regardless of whether a person is "outside" or "inside" the enterprise, he may be liable under § 1962(c) if he participated in the operation or management of the enterprise itself. *Id.* The courts have applied this standard narrowly, however, finding that outside accountants and attorneys have not participated sufficiently in the operation or management

of the enterprise to be held liable under 18 U.S.C. § 1962(c). *Id.* (independent accounting firm which reviewed enterprise's records and advised enterprise was not liable under RICO); *Baumer v. Pachl,* 8 F.3d 1341, 1344 (9th Cir.1993) (attorney who assisted limited partnership's fraudulent scheme by preparing letters, preparing the partnership agreement, and assisting in bankruptcy proceeding was not liable under RICO).

Plaintiffs in this action name RHCC as the enterprise. Plaintiffs contend that Defendant Fasi participated in the operation or management of RHCC by aiding RHCC in obtaining the CUP and thus enabling development of the country club. The Court does not agree that Fasi's alleged participation in granting the CUP satisfies the *Reves* operation and management test. Clearly the attorney who drafted the partnership agreement in *Baumer,* was partially responsible for the partnership's existence; yet, the court found that he lacked sufficient control or direction to be liable under RICO. *See Baumer,* 8 F.3d at 1344.

Plaintiffs also suggest that the alleged bribery of Fasi satisfies the *Reves* test. This is not, however, the classic situation where a defendant uses bribes to control an enterprise. Rather, in the case at bar, RHCC was allegedly using bribes to control the actions of outsiders. Plaintiffs have not submitted evidence suggesting that Fasi himself attempted to exert control over RHCC, or to direct the operations of the corporation. Likewise, Plaintiffs do not suggest that Fasi or any other city official attempted to direct the terms of the relocation plan or to control implementation of the plan. Indeed, Plaintiffs contend that Fasi failed to assert direction and control over the enterprise by refusing to enforce the terms and conditions of the CUP. Accordingly, the Court finds that Defendant Fasi cannot be held liable under 18 U.S.C. § 1962(c) because he did not participate in the operation or management of RHCC. The Court thus GRANTS motion 15.

### 2. *Racketeering Activity*

"Racketeering Activity" is defined in 18 U.S.C. § 1961(1) as:

(A) any act or threat involving murder, kidnaping, gambling, arson, robbery, bribery, extortion, or dealing in narcotic or other dangerous drugs, which is chargeable under State law and punishable by imprisonment for more than one year;

(B) any act which is indictable under any of the following provisions of title 18, United States Code: ... [including section 1341, relating to mail fraud, and other enumerated federal statutes, covering some 30–40 types of crimes].

*See also Sun Savings and Loan Ass'n v. Dierdorff,* 825 F.2d 187, 191 (9th Cir.1987); *First Pacific Bancorp, Inc. v. Bro,* 847 F.2d 542, 546 (9th Cir.1988).

#### a. *Bribery*

In motion 9 Defendant Fasi urges the Court to grant summary judgment in his favor with respect to Plaintiffs' claims based upon the alleged racketeering activity of bribery. In motion 10, Defendants Masanori Kobayashi and Yoshinori Hayashida likewise request summary judgment with respect to Plaintiffs' claims based upon bribery. Defendants YYVC, Han Kuk Chun and Tetsuo Yasuda join in this motion.

 Hawaii state law makes it illegal for: (1) a public servant; (2) to solicit, accept or agree to accept (either directly or indirectly); (3) pecuniary benefit; (4) with the intent that his vote, opinion, judgment, exercise of discretion, or other action as a public servant will thereby be influenced. H.R.S. § 710–1040(1)(b). It is likewise illegal for a person to: (1) confer, or offer or agree to confer (directly or indirectly); (2) pecuniary benefit; (3) upon a public servant; (4) with the intent to influence the public servant's vote, opinion, judgment, exercise of discretion or other action in his official capacity.

 Defendant Fasi argues that the bribery claims must fail because Plaintiffs' cannot prove that he solicited, accepted or agreed to accept the campaign contributions. Although Defendant Fasi states that the contributions were never formally accepted and that the money was returned, the Court will not consider his statements as support for this motion because Defendant Fasi subse-

quently refused to answer questions concerning the campaign contributions in his December 1994 deposition. Plaintiffs have submitted some evidence indicating that after the contribution checks were returned to YYVC, the funds were given back to the campaign in cash. *See* Affidavit of Robert Carter, Exhibit 55–16 of Plaintiffs' Memorandum in Opposition. Thus, the Court finds Plaintiffs have raised a genuine issue of fact whether Fasi accepted or agreed to accept the funds either directly, or indirectly through his campaign organization.

 Defendant Fasi further argues that Plaintiffs cannot prove that Fasi accepted the alleged funds "with the intent that his vote, opinion, judgment, exercise of discretion, or other action as a public servant would thereby be influenced." According to Fasi, because the approval of the CUP occurred on June 13, 1986, prior to the date of the campaign contributions, he could not have accepted the contributions with the intent that his decision regarding the CUP be influenced. Fasi further contends that he could not have intended to be influenced by the contributions because he did not have the authority, duty, or responsibility to approve the CUP or to enforce YYVC's compliance with the conditions of the CUP.

The Court finds Defendant Fasi's assertion that, as mayor, he had no influence over the grant or enforcement of the CUP to be implausible. Although official power may well have been vested in the director of the DLU, the city directors are all members of the mayor's cabinet and answerable to the mayor. Moreover, Fasi himself testified that his directors were all appointed from among his "supporters and friends," and were all members of Friends of Fasi. As further evidence of Fasi's involvement in the decisions of his city directors, Plaintiffs submitted a letter concerning a "land swap" in connection with the Maunawili Valley Golf Course. This letter, addressed to Defendant Fasi and signed by the Deputy Director of the Departments of Parks and Recreation, demonstrates that the Director sought approval from the mayor prior to pursuing negotiations. Additionally, there is evidence that Defendant Fasi attended town meetings during which he indicated

his involvement in enforcing the provisions of the CUP. Moreover, the Court notes that the fact that the campaign contributions were made after the CUP was granted does not preclude a finding that the alleged bribes were given in exchange for Fasi's aid in obtaining approval or non-enforcement of the CUP. Based on the above, the Court finds Plaintiffs have raised a genuine issue of fact whether Fasi intended to be influenced by the campaign contributions.

 Defendants Masanori Kobayashi and Yoshinori Hayashida contend that the illegal contributions were merely "good will" expenditures, intended to promote a favorable business climate generally, and not payments specifically intended to influence Fasi and others to act favorably towards the donors. "Not every gift, favor or contribution to a government or political official constitutes bribery." *United States v. Arthur*, 544 F.2d 730, 734 (4th Cir.1976). Rather, the intent that the official's actions be influenced by the gift, favor or contribution is crucial to a violation of the state bribery statute. *Id.;* H.R.S. § 710–1040(1)(b). Although vague expectations of some future benefit is not sufficient to make a campaign contribution a bribe, in the case at bar, Plaintiffs allege that Defendants sought specific benefit in the form of the CUP and non-enforcement of its provisions in exchange for the contributions. It is undisputed that Defendants illegally contributed the funds while YYVC was in the process of developing a golf course which it had recently obtained a special use permit to build. There is also evidence that at least some of the contributions, subsequently returned as improper, were then resubmitted in cash form. The Court further notes that all of the Defendants refused to answer questions regarding the contributions in their depositions. Therefore, the Court finds Plaintiffs have raised a genuine issue of fact as to whether Defendants made the illegal contributions with the intent to influence the decisions of Fasi or other government officials.

 The Court finds that Plaintiffs have failed to establish that Defendant Fasi received pecuniary benefit from the $5 million gift to the City and County of Honolulu. "Pecuniary benefit" is defined as "benefit in the form of money, property, commercial interests, or anything else the primary significance of which is economic gain." H.R.S. § 710–1000(14). Pecuniary benefit is to be distinguished from the term "benefit" which is much broader and which is defined as "gain or advantage, or anything regarded by the beneficiary as gain or advantage, including benefit to any other person or entity in whose welfare he is interested." H.R.S. § 710–1000(2). Plaintiffs contend that Fasi "used" the gift during his election campaign by taking credit for obtaining the funds for the City of Honolulu. This is not sufficient pecuniary benefit to establish a bribe under the Hawaii bribery statute.

In conclusion, the Court GRANTS in part motion 9. The Court finds Plaintiffs failed to establish a genuine issue of fact whether the $5 million gift to the City and County of Honolulu was a bribe. The Court DENIES motions 9 and 10 with respect to the campaign contributions. The Court finds that Plaintiffs have raised a genuine issue of fact whether the campaign contributions were in fact bribes.

### b. *Mail Fraud*

 To allege a violation of the mail fraud statute, 18 U.S.C. § 1341, Plaintiffs must show that:

(1) Defendants devised a scheme to defraud;

(2) Defendants used the mails in furtherance of the scheme;

(3) Defendants did so with the specific intent to deceive or defraud.

*Sun Savings and Loan Association v. Dierdorff*, 825 F.2d 187, 195 (9th Cir.1987). The requirement of specific intent under the mail fraud statute is satisfied by "the existence of a scheme which was reasonably calculated to deceive persons of ordinary prudence and comprehension and this intention is shown by examining the scheme itself." *United States v. Green*, 745 F.2d 1205, 1207 (9th Cir.1984).

 Fraudulent intent requires that a person knowingly and willfully act to defraud. Therefore, good faith generally constitutes a complete defense to any crime which requires fraudulent intent. *United States v. Faust*, 850 F.2d 575, 583 (9th Cir.

1988). Reliance on the advice of counsel is a circumstance indicating good faith which the trier of fact is entitled to consider on the issue of fraudulent intent. *Bisno v. United States,* 299 F.2d 711, 719 (9th Cir.1961); *United States v. Piepgrass,* 425 F.2d 194, 198 (9th Cir.1970). A claim of good faith reliance on counsel requires that the advice be obtained after full disclosure of all the facts to which the advice pertains. *United States v. Conforte,* 624 F.2d 869, 877 (9th Cir.1980). The defendant must also show that he actually relied on the advice, believing it to be correct. *Id.* Reliance on advice of counsel will not shield a party who simply confers with an attorney as one would confer with any business associate. *Piepgrass,* 425 F.2d at 198. It will also not shield defendants who retain counsel to insure the success of their fraudulent schemes, rather than to secure legal advice. *United States v. Shewfelt,* 455 F.2d 836, 838 (9th Cir.1972).

 In motion 11 Defendants Masanori Kobayashi and Yoshinori Hayashida, joined by all Defendants except Fasi, contend that they lacked the requisite intent to defraud because the eviction notices and letters concerning the relocation plan were lawyer work product. Reliance on counsel, however, is not a complete defense to mail fraud. In the case at bar, Plaintiffs have, on various occasions, alleged that Defendants' attorneys aided Defendants in carrying out their fraudulent schemes. If Plaintiffs' allegations are true, then Defendants' reliance on the advice of their attorneys would not have been in good faith.

Nonetheless, the Court finds no basis for mail fraud under the alleged eviction scheme. As noted previously, Defendants had a right to evict Plaintiffs and to inform Plaintiffs that they intended to do so. This Court previously found Plaintiffs had either actual or constructive notice of their right to remove crops and improvements from the property. *See supra,* p. 1415. Accordingly, Defendants' failure to inform them of this right could not have been reasonably calculated to defraud Plaintiffs of their interests under the deed. For the reasons discussed previously, the Court finds that Plaintiffs were also on notice of their right to be afforded an opportunity to relocate under CUP. Therefore, Defendants' failure to inform Plaintiffs of this right likewise does not support a finding of fraudulent intent.

 The Court also finds that Plaintiffs' confiscatory relocation scheme lacks merit. There is no indication that Defendants' letters concerning the relocation plan were fraudulent. Plaintiffs claim the letters falsely purported that Defendants' relocation plan satisfied the CUP and that to take advantage of relocation Plaintiffs had to surrender certain interests in the land. As discussed previously, the Court finds that Defendants' plan satisfied the CUP·and that it was reasonable for Defendants to require waiver of certain property interests as a condition of relocation under the CUP. *See supra,* pp. 1416–17.

For the above reasons, the Court GRANTS motion 11 in so far as it pertains to Plaintiffs' allegations of eviction and confiscatory relocation mail fraud schemes. The Court finds that these allegations are meritless.

#### c. *Aiding and Abetting Mail Fraud*

 In motion 13 Defendant Fasi contends that he should be granted summary judgment with respect to Plaintiffs' claims that he aided and abetted in the commission of mail fraud because there is no evidence that he consciously assisted in the fraud. The elements necessary to convict an individual under an aiding and abetting theory are:

(1) that the accused had the specific intent to facilitate the commission of a crime by another;

(2) that the accused had the requisite intent of the underlying substantive offense;

(3) that the accused assisted or participated in the commission of the underlying substantive offense; and

(4) that someone committed the underlying substantive offense.

*United States v. Litteral,* 910 F.2d 547, 550 (9th Cir.1990).

 Because the Court finds that neither the eviction notices nor the letters concerning the relocation plan support Plaintiffs' allegations of mail fraud, Plaintiffs' claims that Defendant Fasi aided and abetted the

commission of these crimes must also fail. *See supra,* p. 1423. Moreover, the Court finds that there is absolutely no evidence that Defendant Fasi had knowledge of the letters, knew of their alleged fraudulent purpose, or had the specific intent to deceive or defraud Plaintiffs. *See United States v. Olson,* 925 F.2d 1170, 1176 (9th Cir.1991). Accordingly, the Court GRANTS motion 13 with respect to Plaintiffs' claims that Defendant Fasi aided and abetted mail fraud based on an eviction scheme or a confiscatory relocation scheme.

The Court likewise GRANTS motion 14 with respect to Plaintiffs' allegations that Defendant Fasi conspired to aid and abet the commission of these schemes of mail fraud. As stated above, there simply is no evidence whatsoever that Defendant Fasi had knowledge of the eviction letters or their allegedly fraudulent purpose. Therefore, there is no evidence that he agreed to commit the substantive offense of mail fraud. *See Litteral,* 910 F.2d at 550.

#### d. *Extortion*

In motion 11, Defendants argue that any actions they took in evicting the tenants were taken in good faith reliance on the advice of counsel and thus lacked the requisite intent for state or federal extortion. Similarly, in motion 12, they argue that all actions taken by them after the City approved their relocation plan were taken in good faith reliance thereon and thus that they could not have possessed the criminal intent necessary to transform their actions into extortion, robbery or conspiracy.

The Court does not agree that either the actions of Defendants' attorneys or the City's approval of YYVC's relocation plan immunized Defendants from liability for any other wrongful actions which they might have taken. If, for example, Defendants intentionally destroyed Plaintiffs' crops or improvements while they were still tenants on the land, it would be irrelevant whether such action occurred under the advice of their attorneys or subsequent to the city's approval of their plan. Likewise advice of their attorneys does not shield Defendants from possible liability for allegedly robbing the Wongs and shooting their bull. Accordingly,

the Court DENIES motions 11 and 12 to the extent that the pertain to Plaintiffs' claims of extortion, robbery and conspiracy.

#### 3. *Pattern of "Racketeering Activity"*

In motion 17 Defendant Fasi contends that Plaintiffs cannot prove that he engaged in a pattern of racketeering activity. According to Defendant Fasi, the alleged bribes do not constitute a pattern of racketeering activity because they did not amount to, nor pose a threat of, continued criminal activity. The Court notes initially that Defendant Fasi's inquiry is again too narrow. To determine whether there is a pattern of racketeering activity, the Court must examine all of the predicate acts, regardless of which Defendants actually committed, or agreed to commit, the alleged acts. With respect to the individual Defendants, it is only necessary that they commit, or conspire to commit, two predicate acts. *See Brooklier,* 685 F.2d at 1222.

RICO defines the term "pattern of racketeering activity" as requiring "at least two predicate acts of racketeering activity . . . the last of which occurred within ten years . . . after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5) (1994). Aside from the minimal requirement of showing the existence of two predicate acts, RICO does not address the meaning of the term "pattern" as used throughout the statute. The United States Supreme Court, recognizing that Congress was concerned in RICO with long-term criminal activity, has held that to prove a pattern of racketeering activity a plaintiff must also show that: (1) the racketeering predicates are related; and (2) that the predicate acts amount to, or pose a threat of, continued criminal activity. *H.J. Inc. v. Northwestern Bell Telephone Company,* 492 U.S. 229, 239, 109 S.Ct. 2893, 2900–2901, 106 L.Ed.2d 195 (1989). Predicate acts are related if they involve "the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id.* at 240, 109 S.Ct. at 2901.

Whether the predicate acts amount to, or pose a threat of, continued criminal activity depends on the specific facts of each case. *Id.* at 242, 109 S.Ct. at 2902. A plaintiff may establish that predicate acts amount to continued criminal activity by establishing that the predicate acts extended over a substantial period of time. *Id.* at 250, 109 S.Ct. at 2906 (related predicate acts occurring with some frequency over at least a 6–year period may be sufficient to satisfy the continuity requirement); *United States v. Dischner,* 974 F.2d 1502, 1507, 1510 (9th Cir.1992) (related predicate acts committed over approximately a three year period satisfied the continuity requirement). Although there is no bright line test for this "closed-ended continuity," the Ninth Circuit and other courts recognize that there are "no case[s] in which a court has held the requirement to be satisfied by a pattern of activity lasting less than a year." *Religious Technology Center v. Wollersheim,* 971 F.2d 364, 366–67 (9th Cir.1992) (collecting cases); *See also Streck v. Peters,* 855 F.Supp. 1156, 1164–65 (D.Haw.1994). Moreover, most courts that have found continuity in a closed period did so in cases involving periods of several years. *See Religious Technology Center,* 971 F.2d at 367, n. 7; *Streck,* 855 F.Supp. at 1164–65.

Where the predicate acts extend over only a few weeks or months, a plaintiff must also demonstrate a threat of future criminal activity. *H.J. Inc.,* 492 U.S. at 242, 109 S.Ct. at 2902; *River City Markets, Inc. v. Fleming Foods West,* 960 F.2d 1458, 1464 (9th Cir.1992) (related predicate acts occurring over a one month period was not sufficient to establish continuity); *Religious Technology Center,* 971 F.2d at 366–67 (related predicate acts occurring over a six month period was not sufficient to establish continuity); *Streck,* 855 F.Supp. at 1165 (related predicate acts occurring over a four month period was not sufficient to establish continuity). In other words, if the period of time is insufficient to establish "closed-ended" continuity, the past conduct must be of the type that threatens future repetition, or "open-ended" continuity. Illegal conduct which is "a regular way of conducting [a] defendant's ongoing legitimate business" may pose a sufficient threat of future criminal activity to satisfy the continuity requirement. *H.J. Inc.,* 492 U.S. at 242, 109 S.Ct. at 2902; *Ticor Title Insurance Company v. Florida,* 937 F.2d 447, 450 (9th Cir.1991) (continuity requirement satisfied where frequency of three forged releases in a 13–month period suggested that the practice had become a regular way of conducting business).

The Court finds that there is a genuine issue of fact as to whether the alleged predicate acts extended over a sufficiently substantial period of time to amount to continued criminal activity. Plaintiffs allege that the first acts of threat and intimidation occurred in early 1987. These intimidation tactics allegedly continued to some extent through 1991 when Plaintiffs were evicted from the property. The alleged robbery and destruction of the Wongs' property occurred in May 1987. The alleged bribes occurred over a 13–15 month period, from August 1987 until December 1988. The alleged destruction of crops and homes appears to have occurred during 1988 and 1989. If these allegations prove to be true, they will support a finding of closed-ended continuity. Accordingly, the Court DENIES motion 17.

### C. *18 U.S.C. § 1962(d)*

In motion 16, Defendant Fasi contends that Plaintiffs do not have a viable claim against him under § 1962(d) for conspiring to violate 18 U.S.C. § 1962(c).

Conspiracy to carry on an enterprise through racketeering activity, indictable under § 1962(d), is a separate crime from the participation in an enterprise through racketeering acts (which may include conspiracy or attempts), indictable under § 1962(c). *United States v. Brooklier,* 685 F.2d 1208, 1221 (9th Cir.1982). Where defendants conspire to commit predicate acts prohibited by RICO, the acts may simply be part of the pattern of racketeering activity supporting a violation of § 1962(a), (b) or (c). It is only where an agreement is undertaken to invest in, acquire control of, or conduct an enterprise through a pattern of racketeering, that there is a RICO conspiracy chargeable under § 1962(d). *Id.* Conversely, to establish a violation of § 1962(d), a plaintiff need

not show that a defendant conspired or agreed to commit the individual predicate acts. *United States v. Tille,* 729 F.2d 615, 619 (9th Cir.1984). Rather, "[proof] of an agreement, the objective of which is a substantive violation of RICO (such as conducting the affairs of an enterprise through a pattern of racketeering) is sufficient to establish a violation of § 1962(d)." *Id.; Baumer,* 8 F.3d at 1346.

 Conspiracy to violate RICO also requires a showing that a defendant "was aware of the essential nature and scope of the enterprise and intended to participate in it." *Baumer,* 8 F.3d at 1346. "A RICO conspiracy 'requires the assent of each defendant charged, although it is not necessary that each conspirator knows all of the details of the plan or conspiracy.'" *Id.* (citing *Brooklier,* 685 F.2d at 1222.)

 In paragraph 104 of their complaint, Plaintiffs allege that Defendants, including Fasi, conspired to violate 18 U.S.C. § 1962(c), in violation of 18 U.S.C. § 1962(d). In particular, Plaintiffs contend that Defendants conspired to participate in the affairs of the enterprise and conspired to commit a pattern of racketeering activity in conducting said affairs.

In their RICO case statement, Plaintiffs describe the following as facts showing the existence of a conspiracy in violation of 18 U.S.C. § 1962(d): Defendants conspired to make bribes; conspired to commit extortion, robbery and mail fraud; conspired to "get the Wong Plaintiffs' cattle out of the way;" conspired "to threaten the entire little village;" and conspired to have valuable trees and crops remain on the property. Plaintiffs' RICO Case Statement, p. 44–46.

These allegations do not suggest that Defendant Fasi conspired or agreed to participate in the operation or management of RHCC. Nor have Plaintiffs' submitted evidence sufficient to infer such an arrangement. *See supra,* p. 1420. Accordingly, Plaintiffs' claim that Defendant Fasi violated § 1962(d) must fail. The Court therefore GRANTS motion 16.

## CONCLUSION

For the foregoing reasons, the Court GRANTS in part and DENIES in part Defendants' various Motions for Summary Judgment. The Court GRANTS in part motions 1, 2 and 4 against all Plaintiffs except Raphael Kamai, Lynda Augustus, Alfredo Aurio, Benita Aurio and Milnor Lum. The Court finds that all Plaintiffs except the aforementioned are precluded by the state court summary possession actions from relitigating the following issues:

a. that Plaintiffs have no right to renewable leases on the property under an option contract;

b. that YYVC's relocation plan did not violate the CUP;

c. that YYVC's relocation plan did not violate a negative covenant contained in the deed to the property;

d. that Tenants Nicanor Amit, Cristita Bolo, Wilfredo Bolo, Josefina Bolo, Alejandro Coloyan, Ofelia Coloyan, Isidro Dilay, Margaret Dilay, Lorraine Dilay, Violeta Dumadag, Estrella Igarta, Sebastian Igarta, Jennie Olinger, Francisco Pedrina, Adoracion Pedrina, William Sullivan, and Jocelyn Sullivan did not have a claim to the property under adverse possession.

The Court GRANTS motion 3 to the effect that the final disposition of Plaintiffs' state court action bars all of Plaintiffs' claims against Y.Y. Valley Corporation, Han Kuk Chun, Tetsuo Yasuda, Masanori Kobayashi, Yoshinori Hayashida, Hiroshi Kobayashi, Eugene Lum and Norma Lum.

The Court DENIES Defendant Fasi's motions 5 and 6, based on immunity and the Federal Election Campaign Act. The Court STRIKES paragraph 116 of the complaint.

The Court GRANTS motions 7 and 8 and GRANTS in part motion 18. Plaintiffs failed to establish a genuine issue of fact whether Defendants' alleged racketeering activities caused them to suffer injury to any interest Plaintiffs had under the CUP, deed or option contract. Plaintiffs' claims of injury to possible interests based on a theory of adverse possession are too tenuous and insubstantial to support their RICO action.

The Court GRANTS in part motion 9. The Court finds that Plaintiffs failed to establish a genuine issue of fact whether the $5 million gift to the City and County of Honolulu was a bribe. The Court DENIES motions 9 and 10 with respect to the campaign contributions. The Court finds that Plaintiffs have raised a genuine issue of fact whether the contributions were in fact bribes.

The Court GRANTS in part motions 11, 13 and 14. The Court finds that Plaintiffs' eviction and confiscatory relocation mail fraud schemes are meritless. The Court DENIES motions 11 and 12 to the extent that they pertain to Plaintiffs' extortion, robbery and conspiracy claims. There is a genuine issue of material fact whether Defendants' reliance on counsel or the city's approval of the plan immunized them from liability for these actions.

The Court GRANTS motions 15 and 16. Plaintiffs have failed to establish a genuine issue of fact whether Defendant Fasi participated, or agreed to participate, in the operation or management of the enterprise. Accordingly, Defendant Fasi is not liable under 18 U.S.C. § 1962(c) or (d).

The Court DENIES motion 17. The Court finds that there is a general issue of material fact whether the alleged predicate acts extended over a sufficiently substantial period to amount to continued criminal activity.

The end result is that Summary Judgment is hereby GRANTED in favor of all Defendants. The Court also DISMISSES all claims of Huberto Dumadag and Rosita Uraniumrhi and STRIKES the estate of Laurencia Canencia from the complaint.

IT IS SO ORDERED.